David Martinez, Bar No. 193183
DMartinez@rkmc.com
Daniel G. Stone, Bar No. 265397
DGStone@rkmc.com
ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
2049 Century Park East, Suite 3400
Los Angeles, CA  90067-3208
Telephone:   (310) 552-0130
Facsimile:    (310) 229-5800

Attorneys for Defendants
FOREVER 21, INC. and
FOREVER 21 RETAIL, INC.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FELT HILDY, LLC., a New York Limited Liability Company, individually and doing business as "FERAL CHILDE," <br><br> Plaintiff, <br><br> v. <br><br> FOREVER 21, INC., a California Corporation; FOREVER 21 RETAIL, INC.; a California Corporation; JUMP CLOTHING, INC., a California Corporation; BNA TEXTILE, INC., a California Corporation; and DOES 1-10, <br><br> Defendants. | Case No. CV 11-05819 SVW (FFMx) <br><br> **JOINT STIPULATION RE FOREVER 21'S REQUEST FOR A PROTECTIVE ORDER WITH RESPECT TO THE DEPOSITION OF MRS. JIN SOOK CHANG; DECLARATION OF DAVID MARTINEZ** <br><br> **DISCOVERY MATTER** <br><br> Date:          January 3, 2012 <br> Time:          10:00 a.m. <br> Courtroom:  E <br><br> Discovery Cut-off:       None Set <br> Pre-Trial Conf.:          May 7, 2012 <br> Trial Date:                  May 12, 2012 <br><br> [Notice of Motion and Motion and Declaration of Regina Yeh filed concurrently herewith] |

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

60532331.2

**TABLE OF CONTENTS**

**Page**

I.   INTRODUCTION ................................................................. 1
   A.   Forever 21's Introductory Statement ................................ 1
   B.   Hildy's Introductory Statement ..................................... 3
II.  FACTUAL BACKGROUND ........................................................ 6
   A.   Forever 21's Statement ............................................. 6
   B.   Hildy's Statement .................................................. 7
III. LOCAL RULE 37 STATEMENT RE  SPECIFIC ATTEMPTS TO RESOLVE ISSUES  RAISED IN THIS MOTION ................................. 9
IV.  LEGAL ARGUMENT ............................................................ 9
   A.   Forever 21's Statement ............................................. 9
      1.   Standard of Analysis for Request for "Apex" Deposition ......... 9
      2.   Mrs. Chang Has No Unique Personal Knowledge Relevant To The Issues in This Case ............................... 12
      3.   Hildy Cannot Demonstrate That It Cannot Obtain Discovery Through Less Burdensome and Intrusive Means ..... 13
      4.   Any Prior Litigation Against Forever 21 Is Irrelevant ......... 14
   B.   Hildy's Statement ................................................. 15
      1.   The Party Seeking a Protective Order Carries A "Heavy Burden" To Demonstrate Why the Requested Discovery Should Be Barred ........................ 15
      2.   Even Assuming *Arguendo* that Chang was Considered an "Apex" Witness," She is Still Subject to the Deposition due to her First-Hand Knowledge of the Facts of this Case ..... 16
      3.   Depositions of Chang Will Cause No Undue Burden, Prejudice or Inconvenience to Defendants ........................ 18
V.   CONCLUSION ................................................................ 18
   A.   Defendants' Statement ............................................. 18
   B.   Hildy's Statement ................................................. 18

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

**FOREVER 21's
TABLE OF AUTHORITIES**

Page

**Cases**

*Abarca v. Merck & Co., Inc.,*
  2009 U.S. Dist. Lexis 71300 (E.D.Cal. August 3, 2009)............................10, 11, 13

*Affinity Labs of Tex. v. Apple, Inc.,*
  2011 U.S. Dist. Lexis 53649 (N.D.Cal. May 9, 2011) ......................................11, 13

*Arizmendi v. City of San Jose,*
  2010 U.S. Dist. Lexis 46288 (N.D.Cal. April 7, 2010)............................... 12, 13, 14

*Baine v. General Motors Corp.,*
  141 F.R.D. 332 (M.D. Ala. 1991)............................................................... 10, 11, 13

*Berning v. UAW Local 2209,*
  242 F.R.D. 510 (N.D. Ind. 2007).......................................................................... 12

*Cardenas v. Prudential Ins. Co. of Am.,*
  2003 WL 21293757 (D. Minn. May 16, 2003) .................................................... 12

*Celerity, Inc. v. Ultra Clean Holding, Inc.,*
  2007 U.S. Dist Lexis 8295 (N.D. Cal. Jan. 25, 2007) ...................................... 10, 13

*Doble v. Mega Life and Health Ins. Co.,*
  2010 U.S. Dist. Lexis 56190 (N.D. Cal., May 18, 2010) ........................... 11, 13, 14

*First Nat'l Mortgage Co. v. Fed. Realty Inv. Trust,*
  2007 U.S. Dist. Lexis 88625 (N.D. Cal. Nov. 19, 2007) ........................... 12, 13, 14

*First United Methodist Church of San Jose, v. Atlantic Mutual Insurance Co.,*
  1995 WL 566026 (N.D. Cal. 1995) ...................................................................... 10

*In re TFT-LCD (Flat Panel) Antitrust Litig.,*
  2011 U.S. Dist. Lexis 85608 (N.D.Cal. Aug. 1, 2011) .................................... 11, 13

*Lewelling v. Farmers Ins. of Columbus, Inc.,*
  879 F.2d 212 (6th Cir. 1989) .............................................................................. 12

*Mehmet v. Paypal, Inc.,*
  2009 U.S. Dist. Lexis 131011 (N.D. Cal. Apr. 3, 2009)............................. 11, 12, 13

*Mulvey v. Chrysler Corp.,*
  106 F.R.D. 364 (D.C. R.I. 1985) .......................................................................... 10

*Patterson v. Avery Dennison Corp.,*
  281 F.3d 676 (7th Cir. 2002) .............................................................................. 12

*Rodriguez v. SLM Corp.,*
  2010 WL 1286989 (D. Conn. Mar. 26, 2010)...................................................... 12

*Salter v. Upjohn Co.,*
  593 F.2d 649 (5th Cir. 1979) .............................................................................. 10

*Synthes USA, LLC v. Spinal Kinetics, Inc.,*
  2011 U.S. Dist. Lexis 27031 (N.D.Cal. March 2, 2011)................................... 11, 13

*Thomas v. Int'l Bus. Mack,*
  48 F.3d 478 (10th Cir. 1995).............................................................................. 12

*United States v. Columbia Broadcasting System, Inc.,*
  666 F.2d 364 (9th Cir. 1982) ................................................................................ 9

- ii -
JOINT STIPULATION RE FOREVER 21'S
MOTION FOR PROTECTIVE ORDER

1

2  **FOREVER 21's**

3  **TABLE OF AUTHORITIES**

4
                                                                                        **Page**
5  **Cases** *(cont'd)*

6  *WebSideStory, Inc. v. NetRatings, Inc.,*
      2007 U.S. Dist. Lexis 20481 (S.D. Cal. March 22, 2007).......................... 10, 13, 16

7  **Rules**

   Central District of California Local Rule 37..............................................................1, 9

8  Federal Rule of Civil Procedure Rule 26.........................................................1, 7, 9

9  Federal Rule of Civil Procedure Rule 30................................................................ 10

10 Federal Rule of Civil Procedure Rule 37.................................................................. 1

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

JOINT STIPULATION RE FOREVER 21'S
MOTION FOR PROTECTIVE ORDER

**HILDY'S TABLE OF AUTHORITIES**

**Cases**                                                                                                                    Page

*Anna Sui Corp. v. Forever 21, Inc., et al.,*
  CV 07-cv-03235 (TPG)(S.D.N.Y. September 24, 2008)...........................................6

*Anthropologie, Inc. v. Forever 21, Inc.,*
  2009 U.S. Dist. LEXIS 20908 (S.D.N.Y. Mar. 13, 2009) .................................6, 8, 17

*Beckman Indus., Inc. v. Int'l Ins. Co.,*
  966 F.2d 470 (9th Cir. 1992) ...............................................................................15

*Blankenship v. Hearst Corp.,*
  519 F.2d 418 (9th Cir. 1975) ...............................................................................16

*DR Systems, Inc. v. Eastman Kodak Co.,*
  2009 WL 2973008 (S.D. Cal. Mar. 22, 2009) .......................................................16

*Express LLC v. Forever 21, Inc., et al.,*
  CV09-04514 ODW (VBKx)(C.D. Cal. November 3, 2011) ...........................5, 6, 17

*Grateful Dead Prods. v. Sagan,*
  2007 U.S. Dist. LEXIS 56810 (N.D. Cal. July 25, 2007)...................................17, 18

*Lexington Ins. Co. v. Sentry Select Ins. Co.,*
  2009 U.S. Dist. LEXIS 122184 (E.D. Cal. Dec. 16, 2009) .......................................17

*Mansourian v. Bd. of Regents,*
  2007 U.S. Dist. LEXIS 95428 (E.D. Cal. Dec. 21, 2007) ...................................15, 16

*Phillips ex rel. Estates of Byrd v. General Motors Corp.,*
  307 F.3d 1206 (9th Cir. 2002) ..............................................................................15

*WebSideStory, Inc. v. NetRatings, Inc.,*
  2007 U.S. Dist. Lexis 20481 (S.D. Cal. March 22, 2007)..........................10, 13, 16

**Rules**

Federal Rule of Civil Procedure Rule 26..............................................................8, 15

Federal Rule of Civil Procedure Rule 37.................................................................. 8

Federal Rule of Civil Procedure Rule 38.................................................................15

JOINT STIPULATION RE FOREVER 21'S
MOTION FOR PROTECTIVE ORDER

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

1   Pursuant to Federal Rule of Civil Procedure 26 and 37 and Central District of

2   California Local Rule 37, Defendants Forever 21, Inc. and Forever 21 Retail, Inc.

3   ("Forever 21") and Plaintiff Felt Hildy, LLC ("Hildy") hereby submit this Joint

4   Stipulation in connection with Forever 21's motion for a protective order with

5   respect to the deposition of Mrs. Jin Sook Chang (named by Hildy in its deposition

6   notice as "Gin Cheng"), as follows:

7                                    **I.**

8                           **INTRODUCTION**

9   **A.    Forever 21's Introductory Statement**

10   While the Federal Rules of Civil Procedure permit broad discovery, such

11   discovery is not without limits.  For example, depositions are not to be used to

12   annoy, embarrass and harass Apex executives who have no unique personal

13   knowledge of facts material to the litigation.  Indeed, a party may not depose a

14   corporation's "Apex" witness unless that person has "unique personal knowledge"

15   of information relevant to the issues in the proceeding that cannot be obtained

16   through a less burdensome source or method.

17   Here, Hildy has noticed the deposition a person it has called "Gin Cheng"

18   (apparently in an attempt to smear Jin Sook Chang, who in the 1980s joined her

19   husband to build Forever 21 into the company it is today, and who holds a top

20   level executive position as the Chief Merchandising Officer of Forever 21, Inc.).

21   For the following reasons, Hildy has not and cannot meet the high standard for

22   compelling Mrs. Chang's deposition:

23   • Mrs. Chang is not a named defendant in this litigation and there are

24   no allegations anywhere in the Second Amended Complaint ("SAC")

25   that she was in any way involved in any aspect of the transactions at

26   issue in the this case;

27

28

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

1  • Forever 21's Initial Disclosures identify those Forever 21 employees
2    with relevant information with respect to this lawsuit; and Forever
3    21 has offered those witnesses for deposition;
4  • Hildy noticed Mrs. Chang's deposition on the same date it served
5    document requests; thus, Hildy intended to make Mrs. Chang sit for
6    deposition without ever reviewing any document produced by
7    Forever 21 to determine whether she was involved in the
8    transactions at issue;
9  • The parties' document productions show that Mrs. Chang was in fact
10   not involved in the transactions alleged in the SAC;
11 • Mrs. Chang is a high level executive at Forever 21, and is not involved
12   with the day-to-day operations of Forever 21 in any way relevant to
13   the allegations in the SAC, and therefore lacks specific, unique
14   knowledge with respect to the material allegations in the SAC;
15 • Hildy could easily serve much less intrusive and burdensome written
16   discovery designed to confirm Mrs. Chang's lack of knowledge;
17 • Prior lawsuits against Forever 21, and any prior order requiring Mrs.
18   Chang to testify in another case, are irrelevant to this motion in this
19   case.  Unlike any such other case:
20   (1)   Mrs. Chang is not named as a defendant;
21   (2)   Hildy's SAC asserts no allegations against her;
22   (3)   The parties' document productions show that she was not
23         involved in the transactions at issue in the SAC;
24   (4)   Hildy's remedy in this copyright case is limited to actual
25         damages – it may not recover statutory damages or
26         attorneys' fees.
27 • Hildy has extended its smear campaign to Mrs. Chang by referring to
28   her as a type of liquor -- "Gin" -- and misspelling her last name as

60532331.2                          - 2 -                JOINT STIPULATION RE FOREVER 21'S
                                                         MOTION FOR PROTECTIVE ORDER

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

1   "Cheng" instead of Mrs. Chang (even though its counsel well knows,

2   based on prior attempts to notice her deposition, that her name is

3   Jin Sook Chang, not "Gin Cheng").

4   Accordingly, because Hildy's proposed deposition of Mrs. Chang is at best

5   premature, and at worst an unwarranted abuse of the discovery process, Forever

6   21 request that the Court to prohibit the proposed deposition of Mrs. Chang until

7   such time as Hildy has conducted less intrusive and oppressive discovery and

8   demonstrates that Mrs. Chang possesses unique, relevant information that is not

9   obtainable through less burdensome means.

10   **B.   Hildy's Introductory Statement**

11   The Federal Rules of Civil Procedure allow for the deposition of any person

12   to be taken during the course of discovery, the scope of which is liberally

13   construed.  Plaintiff Felt Hildy, LLC, individually and doing business as "Feral

14   Childe" ("Hildy") has noticed the deposition of Mrs. Jin Sook Chang ("Chang"), co-

15   owner of Defendants Forever 21, Inc. and Forever 21 Retail, Inc. (collectively,

16   "Defendants" or "Forever 21") in the present lawsuit.  However, in an attempt to

17   hinder or delay the progression of discovery in this case, Defendants now request

18   that the Court issue a protective order barring this deposition. As discussed below,

19   Defendants offer no viable reasoning to support the issuance of a protective order

20   by the Court, and their request should be denied in its entirety.

21   In the past ten years, Forever 21 (of which Chang and her husband founded

22   and own the majority) has been sued in over fifty intellectual property

23   infringement actions stemming from its business practice of intellectual property

24   theft and misappropriation, whereby, instead of paying or hiring designers, it

25   acquires products to be sold in its own Forever 21 retail stores by purchasing other

26   companies' competing products, and directing its manufacturers to produce the

27   products with little or no design changes.  *See* Dkt. No. 18-1 (SAC ¶¶ ("[P]rior to

28   Forever 21's manufacture and/or sale of the Accused Garment, it had obtained a

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

Feral Childe garment bearing the Subject Design from the Marketplace…and then made at most slight alterations to the Subject Design in an attempt to evade detection of its infringement")).  It is Hildy's position that this business model was conceived of by Chang, put into place by Chang, and continues to be directly supervised and managed, on a day-to-day basis, by Chang.

There is substantial support for this position.  Beyond what has been revealed by Forever 21's extensive record as a defendant in copyright infringement actions, it is a matter of public knowledge that Chang is and has always been actively involved in carrying out these practices in the day-to-day operations of her company.  Numerous news articles have profiled Chang as the individual who acts as head buyer of Forever 21, overseeing all merchandise sold though its company:

> Mrs. Chang oversees **all the merchandise**," says Linda (Chang) of her mother.  "But she doesn't travel to store openings. She says: 'I'll get you the product. You sell it.'"

Susan Berfield, "Forever 21's Fast (and Loose) Fashion Empire," BLOOMBERG BUSINESS WEEK (Jan. 20, 2011) (available at http://www.businessweek.com/magazine/content/11_05/b4213090559511.htm): (emphasis added); *see also* Yeh Decl. ¶ 6, Ex. 6.  In reporting on Chang's trial testimony in another infringement suit, New York Magazine reported on Forever 21's response to its troubled past with infringement claims:

> As head buyer for the chain, Chang oversees a team of six or seven who select what to purchase from vendors…She added that her team is aware of the copyright issue — for which Forever 21 has been sued more than 50 times over the last three and a half years — and tries to select garments that won't present legal complications.

Amy Odell, "Forever 21 Founder Doesn't Know Much About Her Company," NEW YORK MAGAZINE, May 21, 2009 (*available at*

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

http://nymag.com/daily/fashion/2009/05/forever_21_founder_doesnt_know.html); Yeh Decl. ¶ 6, Ex. 7.

Consequently, and despite Defendant's unverified contentions to the contrary, there is a substantial basis for the belief that Chang is personally knowledgeable of issues relevant to the allegations contained in the SAC, including the very infringement at issue in this case.

Moreover, while Forever 21 argues that past court orders are irrelevant, this motion is actually yet another attempt out of many to shield Chang from being legitimately deposed or otherwise involved in Forever 21 copyright infringement cases. For example, in *Express LLC v. Forever 21, Inc., et al.,* CV09-04514 ODW (VBKx), Magistrate Judge Kenton of the Central District denied the motion for a protective order for Chang and Forever 21 co-owner Do Won Chang, stating the following:

> While Jin and Do in their Declarations profess to have "no direct personal knowledge" regarding the garments which are at issue in this case, even if those statements were to be accepted by the Court, that would not be a dispositive factor. Express (the Plaintiff) asserts that the "shop and copy" business model to which it alleges it has fallen victim in this case is in fact the pervasive corporate policy of Forever 21, engineered and managed by Jin and Do. Moreover, Express presents evidence that Forever 21 has been named in a large number of lawsuits which concern similar allegations as are raised in this case by Express, and in those cases, Express has produced evidence tending to show that Jin and Do did have knowledge and control both of the particular fabrics or products involved, and of corporate policy relating to the asserted copyright infringement… The Court sees no reason to prohibit or limit the depositions of Jin and Do by Express[…].

*Express LLC v. Forever 21, Inc., et al.,* CV09-04514 ODW (VBKx)(C.D. Cal. November 3, 2011) (Order Denying Motion for Protective Order); *see also* Yeh Decl. ¶ 2, Ex. 2. The facts in the *Express LLC* case mirror the facts in the instant case here.

1    Moreover, in Forever 21's litigation past, other courts have likewise denied

2    such motions to exclude Ms. Chang's deposition or trial testimony.  *See, e.g.,*

3    *Anthropologie, Inc. v. Forever 21, Inc.,* 2009 U.S. Dist. LEXIS 28897 (S.D.N.Y. Mar.

4    10, 2009)(denying motion for protective order for Jin Sook Chang); *see also Anna*

5    *Sui Corp. v. Forever 21, Inc., et al.,* CV 07-cv-03235 (TPG)(S.D.N.Y. September 24,

6    2008)(court denying motion to dismiss for lack of personal jurisdiction, and

7    finding, *inter alia,* that personally named defendant Jin Sook Chang satisfying the

8    "agency and control" test); Yeh Decl. ¶¶ 2-5, Exs. 2-5.

9    As likewise held by the *Express LLC* Court, Hildy is plainly entitled to depose

10   Chang with respect to her knowledge of the business practices of Forever 21 and

11   the infringement at issue in this case.  The declaration of David Martinez, Esq.

12   provides no evidence that Defendants would suffer any harm, undue burden or

13   inconvenience if this deposition were to proceed.

14   Based on all of the above, Defendants' request for a protective order should

15   be denied in its entirety, and Hildy should be allowed to proceed with the

16   deposition of Chang without further delay.

17                                    **II.**

18                       **FACTUAL BACKGROUND**

19   **A.    Forever 21's Statement**

20   Hildy filed its First Amended Complaint ("FAC") in this action on August 4,

21   2011 and served it on Forever 21 on August 10, 2011.  *See* Martinez Decl., at ¶ 2.

22   Hildy alleges that certain garments sold by Forever 21 infringe on a single

23   copyrighted design.  *Id.*  On August 30, 2011, Hildy opposed Forever 21's *Ex Parte*

24   Application for a two-week extension to file a responsive pleading claiming it

25   needed to "move this case swiftly towards a resolution."  *See* Docket No. 9, at pg.

26   2:7-10.

27   On September 6, 2011, Hildy agreed to file its Second Amended Complaint

28   ("SAC") to remove its improper prayer for statutory damages and fees (Hildy failed

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

60532331.2                              - 6 -                    JOINT STIPULATION RE FOREVER 21'S
                                                                MOTION FOR PROTECTIVE ORDER

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

1    to register its copyright prior to the alleged infringement), but then inexplicably

2    waited 41 days – until October 17, 2011 to file its Proposed SAC. *Id.*, at ¶ 4.  The

3    SAC merely prays for actual damages and profits, but not statutory damages or

4    attorneys' fees. *Id.*

5          Forever 21 served its Initial Disclosures on October 17, 2011, as per the

6    parties' agreement under Rule 26.  Hildy failed to do so, and served tardy Initial

7    Disclosures on October 20, 2011.  Forever 21's Initial Disclosures identify Senior

8    Vice President and Chief Financial officer Ann Cadier Kim, and employee Stephanie

9    Kim as individuals having knowledge regarding the claims and defenses at issue in

10   this case. *Id.,* at ¶ 5.

11         Forever 21 propounded document requests, interrogatories and requests

12   for admissions on Hildy on October 12, 2011.  Hildy has served objections, but has

13   provided virtually no responsive information.  As of November 30, 2011, Hildy <u>had</u>

14   <u>not</u> produced any documents. *Id.,* at ¶ 6.

15         Hildy propounded document requests, interrogatories and requests for

16   admissions on Forever 21 on October 20, 2011 -- the same date it noticed the

17   deposition of Mrs. Chang and of Forever 21's person-most-knowledgeable,

18   currently scheduled for December 14, 2011. *Id.*, at ¶ 7.  Hildy also noticed the

19   depositions of persons most knowledgeable at defendants Jump and BNA for

20   December 1st and 2nd, <u>after</u> Mrs. Chang's proposed deposition. *Id.*  Those

21   depositions are currently scheduled for December 15 and 16, 2011.

22         Forever 21 and defendants Jump and BNA served responses to Hildy's

23   written discovery on October 22, 2011.  Defendants Jump and BNA have produced

24   documents. *Id.*, at ¶ 8.  Forever 21 produced its responsive documents on

25   December 1, 2011. *Id.*

26         **B.    <u>Hildy's Statement</u>**

27         Hildy filed this lawsuit against Defendants to enforce its intellectual

28   property rights after discovering Defendants' intentional infringement of its

60532331.2                               - 7 -                    JOINT STIPULATION RE FOREVER 21'S
                                                                 MOTION FOR PROTECTIVE ORDER

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

1  "Teepees" design.  Judge Wilson, the district court in this case, conducted the

2  Status Conference on October 17, 2011, and set a trial date for **May 12, 2012,** a

3  mere seven months in advance, and only five months away at the time of this

4  filing.  *See* Dkt. No. 22 (Order re: Status Conference).  Consequently, on October

5  20, 2011, Hildy served its first set of Discovery Requests, which included the Notice

6  of Deposition of Jin Chang at issue in this case.  Yeh Decl. ¶ 1, Ex. 1.  While

7  Defendants objected to the Notice of Deposition, claiming that Chang has no

8  knowledge given her alleged status as an "apex witness," Hildy had pointed out

9  Chang's previous admissions of her intimate involvement in all product sold at

10  Forever 21 retail stores, and moreover, Defendants' history of masking Chang's

11  knowledge of and involvement with the products at issue in copyright

12  infringement cases.

13      In *Anthropologie, Inc. v. Forever 21, Inc.*, 2009 U.S. Dist. LEXIS 20908

14  (S.D.N.Y. Mar. 13, 2009), Magistrate Judge Dolinger found that Forever 21

15  "deliberately redacted the purchase order documents to conceal Ms. Chang's role

16  in the purchasing decisions."  In ruling on a motion for sanctions against Forever

17  21, the Court stated:

18      Given the fact that defendants' motion (for protective order) was, for
19      reasons previously described, not "substantially justified" (see id. at
20      2-3), plaintiff's request for an award of motion expenses is eminently
      justified. See Fed. R. Civ. P. 26(c)(3) & 37(a)(5).
21

22  *Id.* at *10; *see also* Yeh Decl. ¶ 4, Exs. 4.

23      Hildy submits that the instant motion, which mirrors at least two other

24  identical motions brought by Forever 21 (and which were rejected by other

25  courts), has no merit and is merely a dilatory tactic in the expedited trial schedule

26  of this case.  Nevertheless, Hildy has agreed to hold off on conducting the

27  deposition until a motion for protective order could be brought and decided.

28

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.<br/>ATTORNEYS AT LAW<br/>LOS ANGELES

### III.

### LOCAL RULE 37 STATEMENT RE

### SPECIFIC ATTEMPTS TO RESOLVE ISSUES

### RAISED IN THIS MOTION

The parties met-and-conferred in person on Tuesday, November 22, 2011. *Id.*, at ¶ 9. Forever 21 offered to resolve this motion by producing document and making witnesses available for deposition to demonstrate Mrs. Chang's lack of knowledge.  Forever 21 also suggested that Hildy propound specific discovery targeted at Mrs. Chang's knowledge, and asked Hildy to postpone this motion pending Hildy's review of those documents, as well as documents produced by other defendants, and pending the depositions of other witnesses.  Hildy declined these requests.  *Id*.

### IV.

### LEGAL ARGUMENT

**A.** **Forever 21's Statement**

**1.** **Standard of Analysis for Request for "Apex" Deposition**

Federal Rule of Civil Procedure 26(c) empowers this Court, on good cause shown, to "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."  Fed. R. Civ. P. 26(c); *see also United States v. Columbia Broadcasting System, Inc.*, 666 F.2d 364, 369 (9th Cir. 1982) (" Rule 26(c), setting forth grounds for protective orders, was enacted as a safeguard for the protection of parties and witnesses in view of the broad discovery rights authorized in Rule 26(b).").  Rule 26(c) further provides that the Court may forbid the requested discovery entirely; may specify terms, including time and place, for the discovery; and/or may prescribe a different discovery method than the one being sought.  *Id*.

Courts have frequently considered the potential for abuse inherent in noticing the depositions of high-level executives:

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

**Virtually every court that has addressed deposition notices directed at an official at the highest level or "apex" of corporate management has observed that such discovery creates a tremendous potential for abuse or harassment.** Where a high-level decision maker removed from the daily subjects of the litigation has no unique personal knowledge of the facts at issue, a deposition of the official is improper. This is especially so where the information sought in the deposition can be obtained through less intrusive discovery methods (such as interrogatories) or from depositions of lower-level employees with more direct knowledge of the facts at issue.

*Celerity, Inc. v. Ultra Clean Holding, Inc.*, 2007 U.S. Dist Lexis 8295, *8 (N.D. Cal. Jan. 25, 2007) (prohibiting deposition of plaintiff's CEO and COO "pending the taking of less intrusive methods of discovery, including interrogatories and depositions of lower-level employees." [emphasis added]) [1] ; *see also Abarca v. Merck & Co., Inc.*, 2009 U.S. Dist. Lexis 71300, *22 (E.D. Cal. August 3, 2009) (prohibiting deposition of defendant's CEO).

Thus, courts have uniformly held that deposition of a high-ranking executive, someone at the "apex" of a corporation's hierarchy, may not be taken unless the opposing party has exhausted other, less intrusive discovery methods (such as the deposition of Rule 30(b)(6) witnesses or other lower-lever employees or serving interrogatories), and can show that the executive has unique or superior personal knowledge of discoverable information. *See, e.g.*, *WebSideStory, Inc. v. NetRatings, Inc.*, 2007 U.S. Dist. Lexis 20481, *7 (S.D. Cal. March 22, 2007):

When determining whether to allow an apex deposition, courts often consider: (1) whether or not the high-level deponent has unique first-hand, non-repetitive knowledge of the facts at issue in the case and (2) whether the party seeking the deposition has exhausted other less intrusive discovery methods, such as interrogatories and depositions of lower level employees. ***When a high-level corporate executive lacks unique or superior knowledge of the facts in dispute,***

---

[1] *Citing Mulvey v. Chrysler Corp.*, 106 F.R.D. 364 (D.C. R.I. 1985); *Baine v. General Motors Corp.*, 141 F.R.D. 332, 334 (M.D. Ala. 1991); *First United Methodist Church of San Jose, v. Atlantic Mutual Insurance Co.*, 1995 WL 566026 (N.D. Cal. 1995); *Salter v. Upjohn Co.*, 593 F.2d 649 (5th Cir. 1979).

*courts have found that good cause exists to prohibit the deposition.*

*Id*. [emphasis added]; *see also Synthes USA, LLC v. Spinal Kinetics, Inc*., 2011 U.S. Dist. Lexis 27031, * 4 (N.D.Cal. March 2, 2011) (denying motion to compel deposition of the plaintiff's chief executive officer and stating that: "Here, Spinal Kinetics offers nothing but its supposition that Orsinger has unique and non-repetitive relevant knowledge that cannot be obtained from other sources. Defendant's motion to compel his deposition therefore is denied." [internal quotations omitted]), *citing Baine v. General Motors Corp*., 141 F.R.D. 332, 334 (M.D. Ala. 1991).

In order to demonstrate that an executive has unique knowledge, a party must do more than show that the executive has some knowledge of the events at issue or that the executive's name appears on some pertinent documents (which is not even the case here). *See Abarca*, 2009 U.S. Dist. LEXIS 71300, at *29. Rather, the executive's knowledge must be unique and different from the information provided by other witnesses. *Id.; see also Doble v. Mega Life and Health Ins. Co*., 2010 U.S. Dist. Lexis 56190, at *4 (N.D. Cal., May 18, 2010) (granting protective order precluding deposition of defendant's CEO because plaintiffs could not show he had "unique personal knowledge"); *In re TFT-LCD (Flat Panel) Antitrust Litig.,* 2011 U.S. Dist. Lexis 85608, *18 (N.D.Cal. Aug. 1, 2011) (same).

Further, "Courts regularly require interrogatories, requests for admission, and depositions of lower level employees before allowing the deposition of an apex witness." *See Affinity Labs of Tex. v. Apple, Inc*., 2011 U.S. Dist. Lexis 53649, * 8  (N.D.Cal. May 9, 2011) (plaintiff's motion to compel the deposition of defendant's CEO was denied because plaintiff could not meet its burden to show that the CEO had "unique" and "non-repetitive" knowledge regarding any relevant topic that was not available through less burdensome means); *see also Mehmet v.*

JOINT STIPULATION RE FOREVER 21'S MOTION FOR PROTECTIVE ORDER

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

1    *Paypal, Inc.*, 2009 U.S. Dist. Lexis 131011, at *2 (N.D. Cal. Apr. 3, 2009) (barring

2    depositions of Paypal executives, noting that "[c]ourts generally refuse to allow

3    the immediate deposition of high-level executives, the so-called 'apex deponents,'

4    before the depositions of lower level employees with more intimate knowledge of

5    the case."); *First Nat'l Mortgage Co. v. Fed. Realty Inv. Trust*, 2007 U.S. Dist. Lexis

6    88625, at *6-7 (N.D. Cal. Nov. 19, 2007) (requiring depositions of lower-level

7    employees to determine whether there was a legitimate need to depose high-level

8    executives); *Arizmendi v. City of San Jose*, 2010 U.S. Dist. Lexis 46288, * 8 (N.D.Cal.

9    April 7, 2010) ("A deposition of a high-ranking official generally is improper …

10   where the information sought is available from "lower-level employees with more

11   direct knowledge of those facts.").

12          As demonstrated below, Hildy has not and cannot meet these well-settled

13   standards. [2]

14                    **2.    Mrs. Chang Has No Unique Personal Knowledge Relevant To**

15                            **The Issues in This Case**

16          The record shows that Mrs. Chang has no unique, personal knowledge

17   regarding any matter at issue in this case.  Tellingly, Hildy has not named Mrs.

18   Chang as a defendant and there are no allegations asserted against her.  Further,

19   Forever 21's Initial Disclosures have identified Senior Vice President and Chief

20   Financial officer Ann Cadier Kim, and employee Stephanie Kim as individuals

21   having knowledge regarding the claims and defenses at issue in this case.  *See*

22   Martinez Decl., at ¶ 5.  Forever 21's Initial Disclosures thus confirm that Mrs.

23   _____

24   [2] Courts around the country apply the same analytical framework and require the same high burden in order to compel an Apex deposition.  *See, e.g., Patterson v.*

25   *Avery Dennison Corp.*, 281 F.3d 676, 681-82 (7th Cir. 2002) (refusing to compel deposition of corporation's vice president and controller where plaintiff failed to avail herself of other discovery such as interrogatories); *Thomas v. Int'l Bus. Mack,*

26   48 F.3d 478, 483-84 (10th Cir. 1995) (same); *Lewelling v. Farmers Ins. of Columbus, Inc.*, 879 F.2d 212, 217 (6th Cir. 1989) (same); *Rodriguez v. SLM Corp.*, 2010 WL

27   1286989, at *2 (D. Conn. Mar. 26, 2010) (same); *Berning v. UAW Local 2209*, 242 F.R.D. 510, 512-13 (N.D. Ind. 2007) (same); *Cardenas v. Prudential Ins. Co. of Am.*,

28   2003 WL 21293757, at *l-2 (D. Minn. May 16, 2003) (same).

1   Chang does not have knowledge regarding the claims and defenses in this case,

2   and that Forever 21 does not intent rely upon her testimony.  Moreover, Forever

3   21's documents, including its financial documents and the documents relevant to

4   the transactions at issue, demonstrate that Mrs. Chang was not involved in those

5   transactions.

6        Even if Mrs. Chang had any relevant knowledge, that knowledge would not

7   be unique.  At most it would be duplicative of that possessed by the individuals

8   who <u>were</u> involved in the transactions at issue in this case.  Indeed, Hildy has

9   requested, and Forever 21 has agreed to, depositions of two Forever 21

10  individuals who were directly responsible for handling the purchasing and

11  financials relevant to the accused garments.  Further, Forever 21's vendor, Jump,

12  has similarly agreed to a deposition of its person-most-knowledgeable to testify

13  regarding Jump's transactions with Forever 21.

14       Thus, Hildy cannot establish, as required by law, that Mrs. Chang has

15  unique, personal knowledge of discoverable information relevant to its case.  Hildy

16  has no basis to depose Mrs. Chang other than to attempt to smear, annoy and

17  oppress her.  As such, and as in *Celerity*, *WebSideStory*, *Abarca*, *Synthes*, *Baine*,

18  *Doble*, *In re TFT-LCD*, *Affinity Labs*, *Mehmet*, *First Nat'l Mortgage*, and *Arizmendi*,

19  and the other cases cited, the Court should prohibit Mrs. Chang's deposition.

20       **3.   Hildy Cannot Demonstrate That It Cannot Obtain Discovery**

21            **Through Less Burdensome and Intrusive Means**

22       As discussed, courts uniformly require a party seeking to take an Apex

23  deposition to demonstrate that it cannot discover the information it seeks through

24  less intrusive means.  *See, e.g., Synthes*, 2011 U.S. Dist. Lexis 27031, * 4

25  (depositions); *Affinity Labs of Tex*, 2011 U.S. Dist. Lexis 53649, * 18 (interrogatories

26  and requests for admissions); *Celerity, Inc*., 2007 U.S. Dist. Lexis 8295, *8

27  (interrogatories and the depositions of lower-level employees); *Mehmet*, 2009

28  U.S. Dist. Lexis 131011, at *2 ("lower level employees with more intimate

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

1   knowledge of the case."); *First Nat'l Mortgage Co.*, 2007 U.S. Dist. Lexis 88625, at

2   *6-7 (requiring depositions of lower-level employees to determine whether there

3   was a legitimate need to depose high-level executives); *Arizmendi*, 2010 U.S. Dist.

4   Lexis 46288, * 8 (N.D.Cal. April 7, 2010) ("lower-level employees with more direct

5   knowledge of those facts"); *see also Doble*, *supra*, 2010 U.S. Dist. Lexis 56190, *9

6   ("Although plaintiffs have perhaps not obtained the answers they wanted from

7   lower level employees, that failure does not automatically justify their reaching

8   higher, without the requisite showing of the higher-level official's unique personal

9   knowledge.").

10       Here, had Hildy taken such discovery before forcing Forever 21 to bring a

11   motion for a protective order, it would have learned that Mrs. Chang has no

12   relevant knowledge.  Hildy could have also served a single interrogatory asking

13   Mrs. Chang to confirm that she had no involvement in the underlying transactions.

14   But Hildy did not do so.  Instead, it noticed Mrs. Chang's deposition before

15   reviewing Forever 21's discovery responses and document production, and before

16   taking any depositions, even though at least three relevant depositions are

17   currently scheduled.

18       In short, it appears that Hildy's deposition notice is designed simply to

19   attempt to embarrass and oppress Mrs. Chang (including by attempting to smear

20   her name by referring to her as a type of liquor).  As discussed above, a multitude

21   of courts have issued protective orders prohibiting the deposition of Apex

22   witnesses under facts much less compelling than these.  The same result is

23   warranted here.

24       **4.**    **Any Prior Litigation Against Forever 21 Is Irrelevant**

25       Consistent with its counsel's chronic tactic in prior cases and in this case

26   (*see* Docket No. 9, at pg. 2), Hildy will seek to prejudice this Court by focusing --

27   not on its allegations in this case -- but on prior litigation brought against Forever

28   21.  That litigation has no bearing on any issue <u>in dispute in this case</u>.  Moreover,

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

1   because of the facts at issue <u>in this case</u> any decision compelling Mrs. Chang's

2   deposition in any other matter has no bearing in this case or on the instant

3   motion.  As such, the Court should see Hildy's smear tactics -- of both Forever 21

4   and Mrs. Chang -- for what they are, and should reject them accordingly.

5       **B.**    <u>**Hildy's Statement**</u>

6           **1.**    The Party Seeking a Protective Order Carries A "Heavy Burden"

7               To Demonstrate Why the Requested Discovery Should Be

8               Barred

9       Pursuant to Fed. R. Civ. P. 30 (a), a plaintiff has the right to depose any

10  person, including a party, without leave of court. In order for good cause to exist

11  for the Court to issue a protective order barring a deposition pursuant to Rule

12  26(c) "the party seeking protection bears the burden of showing specific prejudice

13  or harm will result if no protective order is granted." *Phillips ex rel. Estates of Byrd*

14  v. *General Motors Corp.,* 307 F.3d 1206, 1210-11 (9th Cir. 2002) (citing *Beckman*

15  *Indus., Inc.* v. *Int'l Ins. Co.,* 966 F.2d 470, 476 (9th Cir. 1992)("Broad allegations of

16  harm, unsubstantiated by specific examples or articulated reasoning, do not

17  satisfy the Rule 26(c) test.").

18      Thus, while Defendants would have Hildy prove that Chang "must be unique

19  and different from the information provided by other witnesses" under the "Apex"

20  standard, such a standard does not apply whatsoever to Chang.  There is currently

21  *no binding court decision* in the Ninth Circuit or the Supreme Court that requires

22  the use of the above two-part analysis of apex depositions.  *See. e.g, Mansourian*

23  *v. Bd. of Regents,* 2007 U.S. Dist. LEXIS 95428 (E.D. Cal. Dec. 21, 2007)("Although

24  defendant urges the court to adopt this burden-shifting approach, defendant

25  points to no binding Ninth Circuit or Supreme Court precedent requiring that

26  result.").  In fact, the Ninth Circuit instructs that the party moving for a protective

27  order, *i.e.,* Forever 21, carries a "heavy burden" of showing why the discovery

28

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

1   should not be conducted.  *Blankenship* v. *Hearst Corp.,* 519 F.2d 418, 429 (9th Cir.

2   1975).  Hildy submits that Forever 21 has failed to carry that burden.

3          **2.**      Even Assuming *Arguendo* that Chang was Considered an "Apex"

4                      Witness," She is Still Subject to the Deposition due to her First-

5                      Hand Knowledge of the Facts of this Case

6          Moreover, even under the even if the "apex deposition" doctrine were to

7   apply in this case, Defendants' application is nonetheless meritless and should be

8   denied in its entirety. As the authority relied upon by Defendants in making their

9   request makes clear, absent extraordinary circumstances, it is very unusual for a

10  court to prohibit the taking of a deposition, as such a ruling would likely be in

11  error.  *WebSideStory, Inc. v. NetRatings, Inc.*, 2007 U.S. Dist. LEXIS 20481, at *6-7

12  (S.D. Cal. Mar. 22, 2007).

13         The *Mansourian v. Bd. of Regents* Court further stated that following the

14  two-part approach would be appropriate only if "a party truly seeks to depose a

15  high ranking executive official, or some other high-ranking official for no purpose

16  other than harassment." *Id.* at *8 n.2.  Here, Chang should still be subject to a

17  deposition by Hildy because she likely has personal knowledge of the facts at issue

18  in this case, and at the very least, has personal knowledge and approval of the

19  business practices from which the accused infringement arose.  As stated in

20  Defendant's contentions above, the first factor some courts consider in

21  determining whether to allow the deposition of an "apex" witness is whether he

22  or she has "unique first-hand, non repetitive knowledge of the facts at issue in the

23  case." *WebSideStory, Inc. v. NetRatings, Inc.*, 2007 U.S. Dist. LEXIS 20481 at *16.

24  Where "a witness has personal knowledge of facts relevant to the lawsuit, even a

25  corporate president is subject to deposition." *Id.* at *7; *DR Systems, Inc. v.*

26  *Eastman Kodak Co.*, 2009 WL 2973008, *7 (S.D. Cal. Mar. 22, 2009).  Moreover,

27  although there may be lower level employees who may be able to testify to similar

28  facts, this does not mean that "a high level corporate officer's testimony would be

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

'repetitive.' Indeed, it is not uncommon for different witnesses to an event to have differing recollections of what occurred." *Lexington Ins. Co. v. Sentry Select Ins. Co.,* 2009 U.S. Dist. LEXIS 122184 (E.D. Cal. Dec. 16, 2009).

Finally, "a claimed lack of knowledge" generally does not, by itself, "provide sufficient grounds for a protective order." *Grateful Dead Prods. v. Sagan,* 2007 U.S. Dist. LEXIS 56810, at *8 (N.D. Cal. July 25, 2007) ("[A] claimed lack of knowledge or recollection does not provide sufficient grounds for a protective order, since the opposing party is entitled to test that lack of knowledge or recollection."). Here, Defendants offer only argument (through its unverified initial disclosures) and no competent evidence whatsoever that Chang in fact lacks knowledge of the claims asserted in Hildy's SAC. This again contrasts with Forever 21's past litigation, where courts have found Defendants to have engaged in discovery misconduct to actively conceal Chang's involvement in the business. *See, e.g., Anthropologie, Inc. v. Forever 21, Inc.,* 2009 U.S. Dist. LEXIS 20908 (S.D.N.Y. Mar. 13, 2009)(court sanctioning Forever 21 for strategically redacting documents to exclude Jin Sook Chang's name on production documents and also questioning the veracity of other Forever 21's witnesses who downplayed Chang's involvement); *see also Express LLC v. Forever 21, Inc., et al.,* CV09-04514 ODW (VBKx)(C.D. Cal. April 13, 2010)(denying Defendants' protective order, stating that prior similar copyright infringement litigation was relevant to claims and defenses in Forever 21's instant case).

For these reasons, on the basis of being a percipient witness as to either the approved business practices of the company and/or the specific infringing conduct at issue in this case, Chang should be required to attend her duly noticed deposition.

JOINT STIPULATION RE FOREVER 21'S
MOTION FOR PROTECTIVE ORDER

**3.**     Depositions of Chang Will Cause No Undue Burden, Prejudice or Inconvenience to Defendants

While Defendants raise the possibility that discovery of Chang may be accomplished through less intrusive means, such claims are disingenuous since Defendants would have the Court completely preclude any deposition of Chang at all.  Moreover, Hildy should not be first required to seek other methods of discovery to determine Chang's knowledge since no showing of undue burden has been made and "[a]bsent at least some actual showing of undue burden, there is no legal authority for requiring [the deposing party] to use purportedly less burdensome means of obtaining the discovery before allowing 'apex' depositions." *Grateful Dead Prods. v. Sagan*, 2007 U.S. Dist. LEXIS 56810 at *7 (N.D. Cal. July 25, 2007).

Here, Defendants have failed to show *any* evidence of "undue burden" and merely make the completely unsupported assertion that Chang lacks knowledge of any relevant information.  Defendants' motion should therefore be denied.

**V.**

**CONCLUSION**

**A.     Defendants' Statement**

There is no reason to compel Mrs. Chang to appear for deposition at this juncture of the case.  Because there is no evidence that she has any unique relevant knowledge that cannot be obtained from a less burdensome source or method, the Court should Grant Forever 21's Motion in all respects.

**B.     Hildy's Statement**

Hildy is entitled to take the deposition of Chang, in order to pursue the question of her personal knowledge of, supervision of, and control of the activities and operations of Forever 21, including Forever 21's business model and the specific infringing activities that form the basis of Hildy's SAC.  Despite Defendants' claims to the contrary, Chang is a percipient witness and not a mere "apex

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

JOINT STIPULATION RE FOREVER 21'S
MOTION FOR PROTECTIVE ORDER

witness"; Defendants offer no convincing evidence that suggests either that the

discovery sought is being used for an improper purpose or that the taking of these

depositions will impose any undue hardship on their business.  The trial date is fast

approaching, and in no way is its properly noticed deposition "premature."

Accordingly, Hildy respectfully requests that the Court to deny Defendants'

request for a protective order in its entirety.

Dated: December 9, 2011          **ROBINS, KAPLAN, MILLER & CIRESI L.L.P.**


By:___/s/ David Martinez_____
        David Martinez

Attorneys for Defendants
FOREVER 21, INC. and
FOREVER 21 RETAIL, INC.

Dated: December 9, 2011          **DONIGER / BURROUGHS APC**


By:___/s/ Regina Y. Yeh_____
        Regina Y. Yeh

Attorneys for Plaintiff
FELT HILDY, LLC

**DECLARATION OF DAVID MARTINEZ**

I, David Martinez, declare:

1.      I am a partner in the law firm of Robins, Kaplan, Miller & Ciresi L.L.P., counsel for Plaintiff Forever 21, Inc. and Forever 21 Retail, Inc. (collectively, "Forever 21") in the above-captioned action.  I have personal knowledge of the matters stated herein, except where stated on information and belief, and if called as a witness, I would and could competently testify thereto.

2.      Hildy filed its First Amended Complaint ("FAC") in this action on August 4, 2011 and served it on Forever 21 on August 10, 2011 alleging claims for copyright infringement in connection with a clothing design.

3.      On August 30, 2011, Hildy opposed Forever 21's *Ex Parte* Application for a two-week extension to file a responsive pleading, claiming it needed to "move this case swiftly towards a resolution."  *See* Docket No. 9, at pg. 2:7-10.

4.      On September 6, 2011, Hildy agreed to file its Second Amended Complaint ("SAC") in order to remove its improper prayer for statutory damages and fees (Hildy failed to register its copyright prior to the alleged infringement). Hildy inexplicably waited 41 days – until October 17, 2011 to file its Proposed SAC. The SAC merely prays for actual damages and profits, but not statutory damages or attorneys' fees.

5.      Forever 21 served its Initial Disclosures on October 17, 2011, as per the parties' agreement under Rule 26.  Hildy failed to do so, and served tardy Initial Disclosures on October 20, 2011.  Forever 21's Initial Disclosures identify Senior Vice President and Chief Financial officer Ann Cadier Kim, and employee Stephanie Kim as individuals having knowledge regarding the claims and defenses at issue in this case.

/ / /

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

60532331.2

- 1 -

JOINT STIPULATION RE FOREVER 21'S
MOTION FOR PROTECTIVE ORDER

6.      Forever 21 propounded document requests, interrogatories and requests for admissions on Hildy on October 12, 2011.  Hildy has served objections and provided virtually no responsive information.  As of November 30, 2011, Hildy had produced no responsive documents.

7.      Hildy propounded document requests, interrogatories and requests for admissions on Forever 21 and co-defendants Jump and BNA on October 20, 2011 -- the same date it noticed the deposition of Mrs. Chang and of Forever 21's persons-most-knowledgeable, currently scheduled for December 14, 2011.  Hildy also noticed the depositions of persons-most-knowledgeable at defendants Jump and BNA for December 1st and 2nd, <u>after</u> Mrs. Chang's proposed deposition.  Those depositions are currently scheduled for December 15 and 16, 2011.

8.      Forever 21 and defendants Jump and BNA served responses to Hildy's written discovery on October 22, 2011.  Defendants Jump and BNA have produced documents.  Forever 21 intends on producing documents no later than December 2, 2011.

9.      The parties met-and-conferred in person on Tuesday, November 22, 2011.  Forever 21 offered to resolve this motion by producing document and making witnesses available for deposition to demonstrate Mrs. Chang's lack of knowledge.  Forever 21 also suggested that Hildy propound specific discovery targeted at Mrs. Chang's knowledge, and asked Hildy to postpone this motion pending Hildy's review of those documents, as well as documents produced by other defendants, and pending the depositions of other witnesses.  Hildy declined these requests.

10.     In compliance with Local Rule 37, attached hereto at <u>Exhibit A</u> is a copy of the Case Management Order issued on October 26, 2011.  There have been no modifications to that Order.

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

- 2 -

1    I declare under penalty of perjury under the laws of the United States of

2    America and the State of California that the foregoing is true and correct to the

3    best of my knowledge.

4

5    Executed this 9th day of December, 2011, in Los Angeles, California.

6

7    _____/s/ David Martinez_____

David Martinez

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

JOINT STIPULATION RE FOREVER 21'S
MOTION FOR PROTECTIVE ORDER

# EXHIBIT A

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:11-cv-05819-SVW -FFM | | Date | October 17, 2011 |
|---|---|---|---|---|
| Title | Felt Hildy LLC v. Forever 21 Inc et al | | | |

| Present: The Honorable | STEPHEN V. WILSON, U.S. DISTRICT JUDGE | |
|---|---|---|
| Paul M. Cruz | N/A | |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Regina Yeh | David Martinez<br>Soohyun Calvin Myung |

**Proceedings:**       NEW CASE STATUS CONFERENCE

Status conference held.  The Court sets the following dates:

Pretrial Conference  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  May 7, 2012 at 3:00 p.m.

Jury Trial  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  May 12, 2012 at 9:00 a.m.

The defendant, within ten days, is ordered to produce to plaintiff with any and all names of witnesses in Korea.

Plaintiff is ordered to begin the process of issuing letters rogatory.

|  | : | 11 |
|---|---|---|
| Initials of Preparer |  | PMC |

Exhibit A, Page 4