Stephen M. Doniger (SBN 179314)
stephen@donigerlawfirm.com
Scott A. Burroughs (SBN 235718)
scott@donigerlawfirm.com
Regina Y. Yeh (SBN 266019)
regina@donigerlawfirm.com
DONIGER / BURROUGHS APC
300 Corporate Pointe, Suite 355
Culver City, California 90230
Telephone: (310) 590-1820
Facsimile: (310) 417-3538

Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FELT HILDY, LLC., a New York Limited Liability Company, individually and doing business as "FERAL CHILDE,"<br><br>Plaintiff,<br><br>v.<br><br>FOREVER 21, INC., a California Corporation; FOREVER 21 RETAIL, INC.; a California Corporation; JUMP CLOTHING, INC., a California Corporation; BNA TEXTILE, INC., a California Corporation; and DOES 1-10,<br><br>Defendants. | Case No. CV 11-05819 SVW (FFMx)<br>*Honorable Frederick F. Mumm Presiding*<br><br>**DECLARATION OF REGINA Y. YEH, ESQ. IN OPPOSITION TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER** |

I, Regina Y. Yeh, Esq., am an attorney at DONIGER / BURROUGHS APC, attorneys for Plaintiff in this action.  I make this declaration in opposition to

Defendant Forever 21, Inc. and Forever 21 retail, Inc.'s (collectively, "Defendants" or "Forever 21") motion for a protective order.  Unless otherwise stated, If called as a witness I could and would competently testify as follows:

1.  On October 20, 2011 Hildy served its first set of Discovery Requests and a number of Deposition Notices, which included the Notice of Deposition of Jin Chang at issue in this case.  Attached hereto as Exhibit 1 is a true and correct copy of the Notice of Deposition of Jin Sook Chang (which erroneously named Mrs. Chang as "Gin Cheng").

2.  Attached hereto as Exhibit 2 is a true and correct copy of the order *Express LLC v. Forever 21, Inc., et al.,* CV09-04514 ODW (VBKx)(C.D. Cal. November 3, 2011)(Order Denying Motion for Protective Order), in which the court denied Forever 21's motion for a protective order for Jin Sook Chang and Do Won Chang.

3.  Attached hereto as Exhibit 3 is a true and correct copy of the order issued in *Anthropologie, Inc. v. Forever 21, Inc.*, 2009 U.S. Dist. LEXIS 20908 (S.D.N.Y. Mar. 10, 2009), which denied Forever 21's motion for a protective order for Jin Sook Chang and Do Won Chang.

4.  Attached hereto as Exhibit 4 is a true and correct copy of the order issued in *Anthropologie, Inc. v. Forever 21, Inc.*, 2009 U.S. Dist. LEXIS 20908 (S.D.N.Y. Mar. 13, 2009), which granted sanctions against Forever 21 in another copyright infringement case regarding its discovery abuses.

5.  Attached hereto as Exhibit 5 is a true and correct copy of the order issued in *Anna Sui Corp. v. Forever 21, Inc., 2008 U.S. Dist. LEXIS 73457 (S.D.N.Y. Sept. 24, 2008)*, in which the court denied a motion to dismiss for lack of personal jurisdiction, and finding, *inter alia,* that personally named defendant Jin Sook Chang satisfying the "agency and control" test.

PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT

6.    Attached hereto as Exhibit 6 is a true and correct copy of the Business Week Article, "Forever 21's Fast (and Loose) Fashion Empire," BLOOMBERG BUSINESS WEEK (Jan. 20, 2011) (available at http://www.businessweek.com/magazine/content/11_05/b4213090559511.htm)).  Attached hereto as Exhibit 7 is a true and correct copy of the New York Magazine article, "Forever 21 Founder Doesn't Know Much About Her Company," NEW YORK MAGAZINE, May 21, 2009 (available at http://nymag.com/daily/fashion/2009/05/forever_21_founder_doesnt_know.html).

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on December 9, 2011, in Culver City, California.

By:    /s/ Regina Y. Yeh
Regina Y. Yeh, Esq.
Declarant

- iii -

Exhibit 1

Stephen M. Doniger, Esq. (SBN 179314)
Email: stephen@donigerlawfirm.com
Scott A. Burroughs, Esq. (SBN 235718)
Email: scott@donigerlawfirm.com
DONIGER / BURROUGHS APC
300 Corporate Pointe, Suite 355
Culver City, California 90230
Telephone: (310) 590-1820
Facsimile:  (310) 417-3538
Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FELT HILDY, LLC., a New York Limited Liability Company, individually and doing business as "FERAL CHILDE," <br><br> Plaintiff, <br><br> v. <br><br> FOREVER 21, INC., a California Corporation; et al., <br><br> Defendants. | Case No.:  CV 11-5819 SVW (FFMx) <br> *Honorable Stephen V. Wilson Presiding* <br> **NOTICE OF DEPOSITION OF GIN CHENG; NOTICE OF INTENT TO VIDEOTAPE DEPOSITION** <br><br> Date: November 29, 2011 <br> Time: 2:00 p.m. <br><br> Location:  DONIGER / BURROUGHS APC, 300 Corporate Pointe, Suite 355, Culver City, California 90230 |

TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that Plaintiff UNITED FABRICS INTERNATIONAL, INC. will take the deposition of FOREVER 21, INC. representative GIN CHENG, with respect to the matters set forth below at the date, time, and location set forth hereinabove, continuing from day to day, excluding holidays until completed. The deposition will be taken before a certified shorthand reporter authorized to administer oaths who will record the deposition stenographically. The deposition will also be recorded by videotape and/or audiotape. If the deposition does not go forward on the

- 1 – Notice of Deposition

date set forth above, the deposition will take place on a date mutually agreed to by counsel, with the same terms and requirements set forth herein applicable thereto.

The matters on which the designees will be deposed are as follows:

I.      The transactions which gave rise to this action, including without limitation the creation, import, purchase, and sales of the product at issue.

II.     The creation, obtainment, development and modification of the design on the fabric at issue in this action.

III.    The instructions and specifications for the creation and/or manufacture of the products at issue in this action, including without limitation all communications between Deponent and the other parties involved in the creation of the product at issue in this case.

IV.     Deponent's access to the design alleged to be infringed in this action, and the design on the product at issue in this action.

V.      The calculation of the total, gross and net profits obtained by Deponent in connection with the product at issue in this action.

VI.     Deponent's response to receipt of notice of the infringement.

VII.    Deponent's defenses to the claims at issue in this action.

VIII.   Deponent's communications with its vendors and customers for the product at issue in this action.

NOTICE IS FURTHER GIVEN that if any or all of the deponents require the assistance of an interpreter, Plaintiff's counsel must be notified of such requirement, including the specific language and/or dialect for which interpretation is required, within seven days  from the date of this notice.

Dated: October 20, 2011                    By: /s/ Scott A. Burroughs
                                               Scott A. Burroughs, Esq.

- 2 –Notice of Deposition

1

## PROOF OF SERVICE

2

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

3

    I am employed in the County of Los Angeles, State of California.  I am over the age of 18

4

and not a party to the within action; my business address is:  DONIGER/BURROUGHS APC, 300 Corporate Pointe, Suite 355, Culver City, CA 90230.

5

6

    On October 20, 2011, I served the ENCLOSED documents described as **NOTICE OF DEPOSITION OF GIN CHENG; NOTICE OF INTENT TO VIDEOTAPE DEPOSITION** on the following necessary part(ies) in this action:

7

8

9

| David Martinez | Soohyun Calvin Myung |
|---|---|
| Robins Kaplan Miller & Ciresi LLP | S Calvin Myung Law Offices |
| 2049 Century Park East Suite 3400 | 3600 Wilshire Boulevard Suite 1818 |
| Los Angeles, CA 90067-3208 | Los Angeles, CA 90010 |

10

☐by placing the true copies thereof enclosed in sealed envelopes addressed as stated on the

11

attached mailing list.

☐ by placing ☐ the original ☐a true copy thereof enclosed in sealed envelopes addressed as

12

follows:

☒ BY MAIL

13

    ☐ I deposited such envelope in the mail at Los Angeles, California.  The envelope was

14

mailed with postage thereon fully prepaid.

☐  BY FACSIMILE

15

    ☐ On this date I caused to be transmitted to the above-mentioned Facsimile Number(s)

16

the above-referenced document.

☐ BY ELECTRONIC MAIL TRANSMISSION

17

    ☒ As follows:  I am "readily familiar" with the firm's practice of collection and

18

processing correspondence for mailing.  Under that practice it would be deposited with the U.S. postal service on that same day with postage thereon fully prepaid at Los Angeles California in

19

the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date

20

of deposit for mailing in affidavit.

    EXECUTED October 20, 2011, in Culver City, California.

21

☒ I declare under penalty of perjury under the laws of the State of California that the above is

22

true and correct. I further declare that I am employed in the office of a member of the California Bar, at whose direction this service was made

23

24

25

Ann Grozman

26

27

28

Exhibit 1, Page 6

Exhibit 2

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 09-04514-ODW (VBKx) | Date | November 3, 2009 |
|---|---|---|---|
| Title | Express, LLC v. Forever 21, Inc., et al. | | |

| Present: The Honorable | Victor B. Kenton, United States Magistrate Judge | | |
|---|---|---|---|
| Roxanne Horan | | | |
| Deputy Clerk | Court Reporter / Recorder | | Tape No. |

Attorneys Present for Plaintiffs:                    Attorneys Present for Defendants:

None Present                                                  None Present

**Proceedings:** **DEFENDANTS' REQUEST FOR A PROTECTIVE ORDER WITH RESPECT TO THE DEPOSITIONS OF DO WON CHANG AND JIN SOOK CHANG**

The Court has received and reviewed the following documents: "Defendants' Notice of Motion and Motion for a Protective Order with Respect to the Depositions of Do Won Chang and Jin Sook Chang; "[Proposed] Order Granting Defendants' Motion for a Protective Order with Respect to the Depositions of Do Won Chang and Jin Sook Chang;" "Joint Stipulation re Defendants' Motion for a Protective Order with Respect to the Depositions of Do Won Chang and Jin Sook Chang" and "Stipulated Protective Order." The Court determines that a hearing is not necessary in this matter (see Local Rule 7-15), and consequently, the motion hearing calendared for November 17, 2009 is **HEREBY VACATED**.

This intellectual property action alleges copyright infringement concerning fabric patterns and products. The proposed deponents, Jin Sook Chang ("Jin") and Do Won Chang ("Do") are the founders and majority owners of Defendant Forever 21, Inc. ("Forever 21"). In addition, Do is the Chief Executive Officer ("CEO"), and Jin in the Corporate Secretary. (See Declarations of Jin and Do, attached to the Joint Stipulation ("JS").

In alleging infringement, Express asserts that Forever 21 has a business model called "shop and copy" by which it acquires products resold at its own retail stores by purchasing the competing products of other companies and directing manufacturers to produce those products with little or no design changes. (See JS at 3.) Express takes the position that this "shop and copy" business model was conceived by Jin and Do, put into place by them, and they continue to supervise and manage it on a daily basis.

The Court notes that Express has served a substantial amount and variety of written discovery, including Interrogatories to Forever 21 and to Jin and Do, and Requests for Production of Documents to the same parties. (JS at 5.)

Forever 21 takes the position that Jin and Do do not have first-hand knowledge of the matters concerned

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 09-04514-ODW (VBKx) | | Date | November 3, 2009 |
|---|---|---|---|---|
| Title | Express, LLC v. Forever 21, Inc., et al. | | | |

dissatisfied with the answers of all the Defendants to the First Sets of Interrogatories and Requests for Production, which are not part of any current Motion to Compel. (JS at 7.) Further, while the Defendants assert that Jin and Do are "apex" parties, Express takes the position that Jin and Do are named parties, and the "apex" reasoning is therefore inapplicable.

Finally, the Court notes that Jin and Do have not raised any particular issues of burdensomeness or oppression which would be entailed in the taking of their depositions.

While Jin and Do in their Declarations profess to have "no direct personal knowledge" regarding the garments which are at issue in this case, even if those statements were to be accepted by the Court, that would not be a dispositive factor. Express asserts that the "shop and copy" business model to which it alleges it has fallen victim in this case is in fact the pervasive corporate policy of Forever 21, engineered and managed by Jin and Do. Moreover, Express presents evidence that Forever 21 has been named in a large number of lawsuits which concern similar allegations as are raised in this case by Express, and in those cases, Express has produced evidence tending to show that Jin and Do did have knowledge and control both of the particular fabrics or products involved, and of corporate policy relating to the asserted copyright infringement. (See Declaration of Frank J. Colucci, and exhibits thereto.) For example, Express produces a letter from counsel for Plaintiff in a recent litigation (Anna Sui Corp. v. Forever 21, et al., Case No. 1:07-CV-03235-TPG, Southern District of New York), in which Plaintiff's counsel alleged that through discovery, it was learned that with regard to the selection and purchase of garments sold through Forever 21, both Jin and Do were involved in the decisions and implementations of the purchase and sales of the garments at issue in the case. (See Exhibit 1 to Colucci Declaration.)

The Court sees no reason to prohibit or limit the depositions of Jin and Do by Express, with the following caveat. Absent other Order of Court, Express will be limited to one seven-hour deposition of each of these deponents, taken in their personal capacity. If Express elects to take these depositions prior to receipt of written discovery from the Defendants, or before any Motion to Compel is determined with regard to any asserted inadequacy of the Defendants' responses to the written discovery, it does so at its peril. The Court will not be favorably inclined to extend the taking of these depositions based on a later argument that Express received inadequate discovery responses, or that additional matters were learned through discovery which require further deposition testimony from either of these deponents.

Based on the foregoing, the Defendants' Motion for Protective Order is **HEREBY DENIED**.

**IT IS SO ORDERED**.

| | _____ : _____ |
|---|---|
| Initials of Preparer | RH |

Exhibit 3



6 of 6 DOCUMENTS

**ANTHROPOLOGIE, INC., Plaintiff, -against- FOREVER 21, INC., DO WON CHANG, JIN SOOK CHANG, ONE CLOTHING, INC., ORIGINAL INC., SALT & PEPPER, STEPS OF CA, UNO TEXTILE and CONCORD VENTURE, Defendants.**

**07 Civ. 7873 (KJS)(MHD)**

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK**

*2009 U.S. Dist. LEXIS 28897*

**March 10, 2009, Decided**
**March 11, 2009, Filed**

**SUBSEQUENT HISTORY:** Sanctions allowed by, in part, Sanctions disallowed by, in part *Anthropologie, Inc. v. Forever 21, Inc., 2009 U.S. Dist. LEXIS 20908 (S.D.N.Y., Mar. 13, 2009)*

**COUNSEL:** [*1] For Anthropologie, Inc., Plaintiff: Gregory Paul Gulia, Vanessa C. Hew, LEAD ATTORNEYS, Duane Morris, LLP (NYC), New York, NY.

For Forever 21, Inc., One Clothing, Inc., Original Inc., Salt & Pepper, Steps of CA, Uno Textile, Do Won Chang, Jin Sock Chang, Defendants: Robert L. Powley, LEAD ATTORNEY, David J. Lorenz, Hewson Chen, James Martin Gibson, Powley & Gibson, P.C., New York, NY.

**JUDGES:** MICHAEL H. DOLINGER, UNITED STATES MAGISTRATE JUDGE.

**OPINION BY:** MICHAEL H. DOLINGER

**OPINION**

*MEMORANDUM & ORDER*

MICHAEL H. DOLINGER

UNITED STATES MAGISTRATE JUDGE:

Plaintiff Anthropologie, Inc. has sued defendants for repeated infringements of plaintiff's copyrighted patterns and designs and for unfair competition. Defendants have moved for a protective order under *Fed. R. Civ. P. 26(c)* to bar plaintiff from taking the depositions of (1) defendant Do Won Chang, who is a founder of Forever 21 and its chief executive officer, and (2) defendant Jin Sock Chang, who is also a founder of the company and its corporate secretary. [1] The motion is denied.

> 1   Defendants' motion also sought a protective order against the deposition of Lawrence Meyer, who is a Senior Vice President of the company. Plaintiff has since disavowed its intention to [*2] depose Mr. Meyer. (Pl.'s Mem. 1 n.1).

The basis for defendants' motion is the contention of these two individuals that they know little or nothing about the pertinent facts beyond the knowledge of the five corporate employees previously deposed in the case. (Decl. of Do Won Chang, executed Dec. 22, 2008, PP 2-5; Decl. of Jin Sock Chang, executed Dec. 23, 2008, PP 3-5). Accordingly, they say, these depositions should be

precluded as unnecessary and harassing. (Defs.' Mem. 4-10) (citing, inter alia, *In re Ski Train Fire of Nov. 11, 2000 Kaprun, Austria, 2006 U.S. Dist. LEXIS 29987, 2006 WL 1328259, *10 (S.D.N.Y. May 16, 2006))* This argument is meritless.

First, both proposed deponents are individual defendants in this case. Second, contrary to the representations in the declaration of Jin Sock Chang that she had no involvement in the transactions at issue, she holds the role of Head Buyer, and documents recently produced in unredacted form indicate that she was directly involved in the purchase and sale of all but one of the nine garments at issue. (Decl. of Vanessa Hew, Esq., executed Dec. 24, 2008, PP 3, 8, 11 & Exs. A, F, H). Third, plaintiff has a good-faith basis to inquire whether and in what circumstances she [*3] and Do Won Chang personally had access to the allegedly infringed patterns of Anthropologie. (*See id*. P 4 & Ex. B). Fourth, it now appears that defendants sold some infringing garments at discounted prices after the filing of this lawsuit (*id*. PP 15-16), and Do Won Chang apparently has ultimate responsibility for such markdowns. (*Id*. P 15). Fifth, defendant Forever 21 has a gargantuan record as a defendant in infringement cases (*id*. P 5), and it is plainly within the purview of relevant discovery for plaintiff to pursue the question of that defendant's business model, which presumably was developed and/or approved by the two co-founders of the business.

In short, plaintiff has ample basis to pursue depositions of both of these defendants. Moreover, defendants offer no evidence suggesting either that the taking of these depositions will impose an undue hardship on their business or that the discovery sought is being used for an improper purpose.

Finally, in defendants' reply papers they undertake a critique of the legal sufficiency of some of plaintiff's claims or anticipated claims, and seem to argue that therefore the noticed depositions should not take place. (Defs.' Reply Mem. 5-10). [*4] This argument is pure makeweight. Plaintiff has been litigating facially adequate claims for some time and is entitled to full discovery on those claims.

*CONCLUSION*

Defendants' motion for a protective order is denied. The depositions of Do Won Chang and Jin Sook Chang are to be conducted within thirty days.

Dated: New York, New York

March 10, 2009

MICHAEL H. DOLINGER

UNITED STATES MAGISTRATE JUDGE

Exhibit 3, Page 10

Exhibit 4



5 of 6 DOCUMENTS

**ANTHROPOLOGIE, INC., Plaintiff, -against- FOREVER 21, INC., DO WON CHANG, JIN SOOK CHANG, ONE CLOTHING, INC., ORIGINAL INC., SALT & PEPPER, STEPS OF CA, UNO TEXTILE, and CONCORD VENTURE, Defendants.**

**07 Civ. 7873 (RJS) (MHD)**

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK**

*2009 U.S. Dist. LEXIS 20908*

**March 13, 2009, Decided
March 13, 2009, Filed**

**SUBSEQUENT HISTORY:** Motion granted by, in part, Motion denied by, in part *Anthropologie, Inc. v. Forever 21, Inc., 2009 U.S. Dist. LEXIS 66009 (S.D.N.Y., Mar. 17, 2009)*

**PRIOR HISTORY:** *Anthropologie, Inc. v. Forever 21, Inc., 2009 U.S. Dist. LEXIS 28897 (S.D.N.Y., Mar. 10, 2009)*

**COUNSEL:** [*1] For Anthropologie, Inc., Plaintiff: Gregory Paul Gulia, Vanessa C. Hew, LEAD ATTORNEYS, Duane Morris, LLP (NYC), New York, NY.

For Forever 21, Inc., One Clothing, Inc., Original Inc., Salt & Pepper, Steps of CA, Uno Textile, Do Won Chang, Jin Sook Chang, Defendants: Robert L. Powley, LEAD ATTORNEY, David J. Lorenz, Hewson Chen, James Martin Gibson, Powley & Gibson, P.C., New York, NY.

**JUDGES:** MICHAEL H. DOLINGER, UNITED STATES MAGISTRATE JUDGE.

**OPINION BY:** MICHAEL H. DOLINGER

**OPINION**

*MEMORANDUM & ORDER*

MICHAEL H. DOLINGER

UNITED STATES MAGISTRATE JUDGE:

Plaintiff Anthropologie, Inc. commenced this lawsuit against retailer Forever 21 and others, alleging that defendants had manufactured, purchased, distributed, and sold garments that infringed plaintiff's copyrights in a variety of patterns and that in doing so they had also engaged in unfair competition. At the tail-end of discovery, the parties have filed a series of motions directed at their respective adversaries' performance in discovery. In this decision we address a motion by plaintiff for sanctions -- including entry of default judgments and monetary awards -- against the defendants for a potpourri of misconduct, mostly involving deceptive conduct both in discovery [*2] and in making representations about the cessation of allegedly infringing activities by Forever 21.

For the reasons that follow, we grant the motion in

part and deny it in part.

*The Motion*

Plaintiff recites a series of alleged misdeeds by Forever 21 and its principals that Anthropologie claims have irremediably damaged its ability to conduct meaningful discovery and that demonstrate bad faith by defendants. These include (1) the surreptitious redaction by Forever 21 of purchase orders for the purpose of concealing the role of defendant Jin Sock Chang in the purchase of the infringing garments, (2) the filing by Forever 21 of a dishonest and frivolous motion for a protective order to preclude the taking of Ms. Chang's deposition, a motion premised on concealing her role in the purchases, (3) defendants' delay in producing relevant documents and their failure until recently to make a complete production, (4) a false representation by the general counsel of Forever 21 that the company had stopped selling the allegedly infringing garments as of October 9, 2007, and (5) the improper redaction of other documents on the basis of a suspect assertion of irrelevance.

Defendants contest the motion, [*3] insisting that they have done nothing wrong. They further assert that in any event they turned over all relevant documents before plaintiff's scheduled depositions of defendants' witnesses -- in short, soon enough to avoid prejudice to plaintiff.

*Analysis*

Plaintiff premises its sanctions requests on the terms of *Rule 37*, which authorizes a broad range of measures to address failures of a party to comply with court orders directing such disclosures. *See, e.g., Residential Funding Corp. v. DeGeorge Fin. Corp., 306 F.3d 99, 107 (2d Cir. 2003).* Moreover, although *Rule 37(b)* outlines a non-exclusive range of measures available to the court for the failure of a party to comply with an order, even in the absence of the court may impose sanctions for discovery misconduct as an assertion of its inherent powers. *See, e.g, id.; Lucky Brand Dungarees, Inc. v. Ally Apparel Res., Inc., 2009 U.S. Dist. LEXIS 3506, 2009 WL 72982, at *7 (S.D.N.Y. Jan. 8, 2009); Metrokane, Inc. v. Built NY, Inc., 2008 U.S. Dist. LEXIS 69272, 2008 WL 4185865, at *3 (S.D.N.Y. Sept. 3, 2008).*

We assess the grounds for imposition of sanctions pressed by plaintiff more or less in the order presented. We conclude that some relief is warranted, but that

default judgments or [*4] other dispositive relief cannot be justified.

1. *The Redacted Purchase Documents*

The most striking accusation by plaintiff concerns the production by Forever 21 of certain transaction-specific documents relating to the purchase of the allegedly infringing garments. At the end of August 2008, defendant produced a set of purchase orders for the garments in question. Those standard forms only listed a buyer for Forever 21 for one of the garments, and there was no indication on any the forms that they had been redacted to conceal any information. (Decl. of Vanessa Hew, Esq., executed Jan. 9, 2009 PP 8-9 & Ex. A). Then on December 15, 2008, defendants made a supplemental production that included purchase orders for the same set of garments, with one significant difference -- the versions belatedly produced identified Ms. Chang as the buyer for all of the garments. (*Id.* P 10 & Ex. E). Plaintiff contends that the documents provided on August 29 were deliberately altered to conceal (1) Ms. Chang's direct role in purchasing, and (2) the very fact that the purchase orders had been redacted.

Defendants deny that the purchase orders provided in August were deliberately redacted, and they offer what [*5] they describe as an innocent explanation for the sequence of events culminating in the handover of a second version of the documents. According to a declaration by Ann Cadier-Kim, an employee of Forever 21, the original purchase orders contained an identifying notation of the buyer, and some included the name of Ms. Chang, who was the "head buyer" and corporate Secretary, even though she was not directly involved in the transaction. (Decl. of Ann Cadier-Kim, executed Jan. 14, 2009 ("Kim Decl.") P 2). Instead, Ms. Kim says, the people directly involved were members of the so-called "buying and purchase order teams." (*Id.*). Ms. Kim goes on to say that this "historical inaccuracy" was corrected at some point, apparently in the defendant's computer software, and that accordingly when the purchase orders in question were printed out for production, presumably in August 2008, they did not contain the entry for naming a buyer or Ms. Chang's name. (*Id.* P 3). Ultimately, however, Forever 21 did a further search in December 2008 and unearthed the original purchase orders, which did contain the buyer identification of Ms. Chang, and duly produced them to plaintiff. (*Id.* P 4).

This explanation [*6] is less than compelling. First,

Case 2:11-cv-05819-SVW-FFM   Document 29-2   Filed 12/09/11   Page 17 of 29   Page ID #:268

Page 3
2009 U.S. Dist. LEXIS 20908, *6

it is hard to credit the notion that Forever 21, which defendants describe as not maintaining a very sophisticated computer system, would invest manpower in going back into the system to alter purchase orders and other transactional documents pertaining to past transactions for no purpose other than to delete Ms. Chang's name simply for the sake of "accuracy." Second, if the company had bothered to do so, it is entirely unclear why it would not then have inserted the names of those buyers who actually did conduct the transactions, and, more significantly, why all but one of the documents produced in August did not contain any reference to a buyer and even lacked the "buyer" heading found on the original purchase orders. Third, the proffer by Forever 21 about this alleged computerized adjustment comes from Ms. Kim, who, based on her deposition testimony, is not competent to testify about these events, since she professed to have no knowledge about the information systems at the company or record-keeping, accounting, or other related company policies except for payment of bills to suppliers. (Reply Decl. of Vanessa Hew, Esq., executed Jan. 19, 2009 ("Hew [*7] Reply Decl.") PP 6-7 & Ex. C). Fourth, the testimony of another Forever 21 witness, Ms. Heather Choi, directly undercuts defendants' contention, made through Ms. Kim's declaration, that Ms. Chang was not involved in "purchasing decisions." (Kim Decl. P 2). In striking contrast, Ms. Choi testified that Ms. Chang not only was the head of the Buying Department, but was directly involved in purchasing decisions since she "decide[s] whether a certain design can be bought or not bought." (Hew Reply Decl. P 8 & Ex. D).

Under the circumstances, we are well satisfied that defendants deliberately redacted the purchase order documents to conceal Ms. Chang's role in the purchasing decisions. That said, there remains the question of what measures are appropriate to deal with this. Plaintiff seeks dispositive relief in the form of a default judgment. We disagree.

The determination of the sanction should be a product of the court's assessment of the degree of fault of the party against whom sanctions are sought and the extent of the prejudice to the moving party. *See, e.g., Reilly v. Natwest Mkts. Group Inc., 181 F.3d 253, 267-68 (2d Cir. 1999)*; *Treppel v. Biovail Corp., 249 F.R.D. 111, 123-24 (S.D.N.Y. 2008)*; [*8] *Nieves v. City of New York, 208 F.R.D. 531, 535 (S.D.N.Y. 2002)*. Since preclusive sanctions are "a harsh remedy," *LeSane v. Hall's Sec.*

*Analyst, Inc., 239 F.3d 206, 209 (2d Cir. 2001)*, the court should invoke them "only in extreme situations," *id.* (quoting *Theilmann v. Rutland Hospital, Inc.., 455 F.2d 853, 855 (2d Cir. 1972)* (per curiam)), and not ordinarily unless non-compliance is a result of "willfulness, bad faith, fault or gross negligence rather than inability to comply or mere oversight." *Handwerker v. AT&T Corp., 211 F.R.D. 203, 209 (S.D.N.Y. 2002)*; *see also Reilly, 181 F.3d at 271* (finding that preclusive sanctions may be imposed for gross negligence).

In this case, for reasons noted, we believe that the most likely explanation for the peculiar sequence of production of redacted and then unredacted purchases orders involved more than simple negligence. In mitigation, however, it is also undisputed that defendants undertook to correct the deletion of Ms. Chang's name and implicit role in the purchase of the allegedly infringing garments and did so prior to the depositions of the defendants' witnesses. (*See* Decl. of Hewson Chen, Esq., executed Jan. 15, 2009 ("Chen Decl.") P 8). Moreover, [*9] in view of the delay in obtaining Ms. Chang's deposition, plaintiff's counsel will have had an ample opportunity to prepare to question her with the pertinent documents in hand. Hence the prejudice to plaintiff from this imbroglio is minimal, except for the expense of litigating to obtain fuller disclosure of documents, a task undertaken in plaintiff's separate motion to compel, which we have already granted with a further proviso that plaintiff may recover its motion expenses. (March 12, 2009 Mem. & Order 14).

In this regard, we also emphasize, in mitigation of prejudice, that plaintiff may offer competent evidence at trial concerning the sequence of events that involved the redaction of purchase orders and their later production in unredacted form, if plaintiff's counsel deems that desirable, as a means of impeaching the credibility of defendants' witnesses, including Ms. Chang. Furthermore, when deposing Ms. Chang, plaintiff will be free to question her about the circumstances that led to the deletion of her name from the purchase orders.

## 2. *The Protective-Order Motion*

On a related topic, plaintiff complains about defendants' pursuit of a *Rule 26(c)* protective order to bar the deposition [*10] of Ms. Chang and her co-defendant Do Won Chang. The point seems to be that defendants' concealment of Ms. Chang's role in purchasing infringing garments dovetailed with what appears to have been a

bad-faith argument on the *Rule 26(c)* motion that Ms. Chang had no direct involvement in the transactions at issue in the lawsuit and should therefore be excused from testifying in this case.

We have already denied defendants' protective-order motion in a separate order. (March 10, 2009 Mem. & Order 3-4). Although plaintiff did not seek an award of motion expenses in its opposition papers, it does so now. Given the fact that defendants' motion was, for reasons previously described, not "substantially justified" (*see id.* at 2-3), plaintiff's request for an award of motion expenses is eminently justified. *See Fed. R. Civ. P. 26(c)(3) & 37(a)(5).* Plaintiff may serve and file an appropriate application within two weeks.

Finally, insofar as plaintiff seeks, in the current motion, to compel Mr. and Ms. Chang to travel from California to New York for their depositions, we fail to see the justification for such an order. Even if defendants had timely disclosed the role of Ms. Chang and not sought to [*11] preclude their depositions, there is no doubt that those depositions would have been conducted in California, where the Changs and their business are located. Their unsuccessful, and possibly dishonest, resistance to those depositions does not logically lead to the conclusion that the locus for the depositions sessions should be moved across the continent. Similarly, plaintiff's alternative request, that it be granted the expenses of those depositions, including attorney's fees, is unjustified. If the Changs had not resisted being deposed, plaintiff would have borne the expense of deposing them, and there is no reason to alter that allocation of burdens now.

3. *Defendants' Non-Production of Requested Documents*

In the course of plaintiff's current motion, it alludes to the failure of defendants to make complete or timely production of various categories of documents. This complaint was the topic of still another separate motion, this one to compel discovery, which we have just adjudicated largely in plaintiff's favor. (March 12, 2009 Mem. & Order 11-14). Moreover, in our order we have authorized an application by plaintiff for an award of motion expenses. (*Id.* at 14). Plaintiff's reiteration [*12] of that set of controversies in the broader context of this motion does not justify any additional relief on that score.

4. *False Representation that Infringing Sales Stopped*

Plaintiff recites that at some unspecified time Mr. Young Kwon, identified as the General Counsel for Forever 21, made a representation in an e-mail and by telephone to plaintiff's attorney that the company had stopped selling the allegedly infringing items by October 9, 2007. (Hew Decl. P 24). [1] According to plaintiff, it discovered that this representation was false when it belatedly received some sales documents from Forever 21 on December 17, 2008. (*Id.* P 24 & Ex. H). It claims prejudice because, it says, a timely production (or an accurate representation by Mr. Kwon) would have led it to seek a temporary restraining order and preliminary injunction. (Pl.'s Mem. 8-9).

> 1   Plaintiff has not proffered the e-mail, assertedly because it was part of settlement discussions. (*See id.*). This sensitivity appears misplaced, if for no other reason, because plaintiff is implicitly asserting that the representation in the e-mail is a proper subject for litigation. In any event, its use for appropriate purposes is not barred [*13] by *Federal Rule of Evidence 408. See Fed. R. Evid. 408(b).*

Defendants do not dispute the account of Mr. Kwon's statement or the fact that some of the garments were sold after October 9, 2007, but suggest that the misstatements were innocent and that plaintiff has not been prejudiced. Thus, defendants states, or at least implies, that Forever 21 arranged to halt all sales by October 9, 2007, and that Mr. Kwon had no reason to believe otherwise when he made the statements. (Defs.' Mem. 9-10). It also notes that the sales records made available to plaintiff reflect the sale of only thirty-six items, with sales of only approximately $ 260.00, and imply that this simply reflects one or more errors in carrying out a company recall of these garments. (Chen Decl. P 10 & Ex. C).

Defendants' explanation of the apparent anomaly is not facially implausible, especially in view of the small number of garments involved. Furthermore, we see no basis for the plaintiff's contention that if it had known of these sales on a timely basis it would have sought and obtained emergency injunctive relief. The amount involved is clearly *de minimus* and, if disclosed, would in all likelihood simply have led to an [*14] agreement to tighten the procedures for ensuring against future slip-ups of this nature. In any event, plaintiff will be free to use the general counsel's representation and the evidence of later sales at trial, if it so chooses, to impeach the

credibility of the defendants' witnesses, and, if appropriate, to evidence defendants' willfulness, although we strongly question the probative value of such evidence if the only later sales are the ones reflected in the sales records proffered to the court. [2]

> 2  We note that defendants have been required to make an additional production of sales documents, and hence the numbers in question may change before trial.

No further relief is warranted on this score.

5. *Other Redacted Documents*

Finally, plaintiff complains that on December 15, 2008, on the eve of depositions, defendants produced in redacted form a set of twenty-five documents, and when questioned about the basis for the redactions, admitted that the deletions were not for privileged materials but rather were done because the redacted portions were not relevant to the case. (Pl.'s Mem. 9-10). Plaintiff further notes that the redactions occur in the midst of a string of e-mail exchanges between [*15] Ms. Monica Rao, a Forever 21 employee, and a vendor, defendant Concord Ventures, which supplied one of the infringing garments, known as the Open Work Blue Dress. (*Id.*; Hew Decl. PP 21-23 & Ex. G; Hew Reply Decl. P 11 & Ex. F).

Defendants assert that the deletions were permissible to eliminate irrelevant material, and they further observe that they have offered plaintiff the opportunity to review the unredacted documents at their attorney's office. (Chen Decl. P 11 & Ex. D). It appears, however, that they have refused to allow plaintiff's counsel to copy them. (Hew Reply Decl. P 14).

The short answer to this issue is that defendants are required to produce the non-privileged documents in unredacted form. This is to be done within seven days.

*CONCLUSION*

For the reasons noted, plaintiff's motion for sanctions is granted to the following extent:

1. Plaintiff may question Ms. Chang at her deposition concerning the events surrounding the deletion of her name from the purchase orders, and may use admissible evidence at trial concerning these events for impeachment purposes.

2. Plaintiff may apply, within two weeks, for an award of motion expenses engendered by defendants' unsuccessful application [*16] for a protective order precluding the depositions of Mr. and Ms. Chang.

3. Plaintiff may offer at trial competent evidence of the representations by Mr. Kwon regarding the cessation of allegedly infringing sales and the falsity of those representations either for impeachment purposes, and also to demonstrate willfulness, if the trial court deems that evidence admissible for the latter purpose.

4. Defendants are to produce to plaintiff in unredacted form the redacted documents previously provided to plaintiff on December 15, 2008. This production is to be done within seven days.

The parties are to bear their own expenses of this motion.

Dated: New York, New York

March 13, 2009

/s/ Michael H. Dolinger

MICHAEL H. DOLINGER

UNITED STATES MAGISTRATE JUDGE

Exhibit 5



2 of 2 DOCUMENTS

**ANNA SUI CORP., Plaintiff, - against - FOREVER 21, INC., FOREVER 21 RETAIL, INC., FOREVER 21 LOGISTICS, LLC, DO WON CHANG, JIN SOOK CHANG, GADZOOKS, INC., GERALD P. SZCZEPANSKI and JOHN DOES 1 to 20, Defendants.**

**07 Civ. 3235 (TPG)**

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK**

*2008 U.S. Dist. LEXIS 73457*

**September 24, 2008, Decided
September 25, 2008, Filed**

**SUBSEQUENT HISTORY:** Injunction granted at *Anna Sui Corp. v. Forever 21, Inc., 2009 U.S. Dist. LEXIS 33044 (S.D.N.Y., Apr. 17, 2009)*

**COUNSEL:** [*1] For Anna Sui Corp., Plaintiff: Andrea Lynne Calvaruso, Marya Lenn Yee, LEAD ATTORNEYS, Amy Opp, Jennifer Louise Brillante, Donovan & Yee LLP, New York, NY.

For Forever 21, Inc., Forever 21 Retail, Inc., Forever 21 Logistics, LLC, Do Won Chang, Jin Sook Chang, Defendants: Robert L. Powley, LEAD ATTORNEY, David J. Lorenz, James Martin Gibson, Powley & Gibson, P.C., New York, NY.

**JUDGES:** Thomas P. Griesa, United States District Judge.

**OPINION BY:** Thomas P. Griesa

**OPINION**

Plaintiff Anna Sui Corp. brings this action against defendants Forever 21, Inc., Forever 21 Retail, Inc., Forever 21 Logistics, LLC, Do Won Chang, Jin Sook Chang, Gadzooks, Inc., Gerald P. Szczepanski and John Does 1 to 20, asserting (1) willful copyright infringement in violation of *17 U.S.C. § 101*, (2) unfair competition and false designation of origin or sponsorship in violation of *15 U.S.C. § 1125(a)*, (3) unlawful trade practices in violation of New York General Business Law, and (4) common law unfair competition in violation of New York state law.

Defendants Do Won Chang ("DWC") and Jin Sook Chang ("JSC") move to dismiss the amended complaint for lack of personal jurisdiction. The motion is denied.

**Facts**

On a motion to dismiss for lack of jurisdiction [*2] under *Fed. R. Civ. P. 12(b)(2)*, the plaintiff bears the burden of showing that the court has jurisdiction over the defendant. Where, as here, the parties have not engaged in discovery on the issue of jurisdiction, all pleadings and affidavits must be construed in the light most favorable to the plaintiff and all doubts must be resolved in the plaintiff's favor. *Merck & Co. v. Mediplan Health Consulting, Inc., 425 F. Supp. 2d 402, 418-19 (S.D.N.Y. 2006)*.

Anna Sui is a well-known designer of women's

2008 U.S. Dist. LEXIS 73457, *2

fashions. She incorporated her business under the name Anna Sui Corp., which is a New York corporation with a principle place of business in New York. The Forever 21 entities ("Forever 21") are domiciled in Delaware and California. The headquarters of the business is in Los Angeles, California. Forever 21 operates women's clothing stores. Defendants Forever 21, Inc. and Forever 21 Retail, Inc. admit personal jurisdiction. Defendant Forever 21 Logistics, LLC, however, denies personal jurisdiction, as do the moving defendants DWC and JSC.

DWC is a co-founder and Chief Executive Officer of Forever 21, Inc. JSC is a co-founder of and Head Buyer for Forever 21, Inc. Plaintiff alleges that Forever [*3] 21 is primarily owned by DWC and JSC. Both DWC and JSC are residents of California. Plaintiff's amended complaint alleges that this court has personal jurisdiction over DWC and JSC, because they "are conscious, active and dominant forces in the infringing activity" of Forever 21, which includes activity in New York. In their motion to dismiss, DWC and JSC contend that they have never undertaken any business activities in New York in their capacities as individuals.

It is uncontested that Forever 21 operates a number of stores in the state of New York, including several stores in New York City. Indeed, plaintiff alleges that a number of infringing designs have been discovered in Forever 21's Manhattan stores. Plaintiff's amended complaint contains numerous allegations to the effect that by virtue of their positions as owners and high ranking officials of Forever 21, DWC and JSC are responsible for the management and operation of Forever 21 stores, including the decision to implement a business plan centered on infringing protected designs. Plaintiff asserts that as owners of Forever 21, DWC and JSC have benefited financially from the sale of Forever 21 goods within New York, including [*4] the sale of infringing designs. Plaintiff further alleges that DWC and JSC own a holding company, Too Capital, which owns One Clothing, the largest vendor to Forever 21, which is a source of infringing designs.

## Discussion

In an action arising under federal question jurisdiction, the court will look to the law of the state where the court sits to resolve the question of personal jurisdiction over an out-of-state defendant. *Kinetic Instruments, Inc. v. Lares, 802 F. Supp. 976, 981 (S.D.N.Y. 1992).* New York law thus controls on the issue

of whether this court may exercise personal jurisdiction over defendants, DWC and JSC.

To determine whether personal jurisdiction may be properly exercised, this court must conduct a two-part analysis: whether New York state law permits personal jurisdiction, and if so, whether the exercise of personal jurisdiction under state law comports with federal due process requirements. *Whitaker v. Am. Telecasting, Inc., 261 F.3d 196, 208 (2d Cir. 2001).*

*Exercise of Jurisdiction Under New York's Long-Arm Statute*

Plaintiff relies on *CPLR § 302(a)(2)*, which provides, in pertinent part:

(a) *Acts which are the basis of jurisdiction.* As to a cause of action arising from [*5] any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent:

* * *

2. commits a tortious act within the state, ...

Copyright infringement is a commercial tort that can give rise to jurisdiction under *§ 302(a)(2). J. Racenstein & Co., Inc. v. Wallace, No. 96 Civ. 9222, 1997 U.S. Dist. LEXIS 14928, 1997 WL 605107, at *2 (S.D.N.Y. Oct. 1, 1997).* Indeed, offering "one copy of an infringing work for sale in New York, even if there is no actual sale, constitutes commission of a tortious act within the state sufficient to imbue this court with personal jurisdiction over the infringers." *Editorial Musical Latino Americana, S.A. v. MAR Int'l Records, Inc., 829 F.Supp. 62, 64 (S.D.N.Y. 1993).*

Here, plaintiff does not assert that there is jurisdiction over DWC and JSC on the basis of personal presence in New York and the personal commission of tortious acts in the state. Instead, plaintiff maintains that this court has jurisdiction over DWC and JSC on a theory of agency.

*CPLR 302(a)* provides that a defendant may be subject to long-arm jurisdiction for acts that he performed

personally or "through an agent." Here, [*6] plaintiff alleges that Forever 21 engaged in infringing conduct "at the direction and supervision of" DWC and JSC. As it is uncontested that this court has personal jurisdiction over defendants Forever 21, Inc. and Forever 21 Retail, Inc., plaintiff contends that (and this court must assess whether) Forever 21 may be considered the agent of defendants, DWC and JSC, so that the purported infringing activities of Forever 21 in New York may be relied on to obtain personal jurisdiction over DWC and JSC under *CPLR 302(a)(2)*.

Under New York law, "a corporation can act as the agent of a corporate officer and thus subject the officer to personal jurisdiction under *section 302*." *Beatie & Osborn LLP v. Patriot Scientific Corp., 431 F. Supp. 2d 367, 389 (S.D.N.Y. 2006)*. To assert such an agency theory, a plaintiff must allege: "(1) that the corporation engaged in purposeful activities in New York in relation to the transaction; (2) that the corporation's activities were performed for the benefit of the individual defendant; (3) that the corporation's activities were performed with the knowledge and consent of the individual defendant; and (4) that the individual defendant exercised some control [*7] over the corporation." *Id.* [1]

> 1  In *Kreutter v. McFadden Oil Corp.,* the New York Court of Appeals rejected the fiduciary shield doctrine. *71 N.Y.2d 460, 470-72, 522 N.E.2d 40, 527 N.Y.S.2d 195 (1988).* Therefore, defendants DWC and JSC will not be insulated from jurisdiction in New York simply because their contacts with the state were made pursuant to their employment with Forever 21. Under the fiduciary shield doctrine, a corporate employee sued in his personal capacity was not subject to jurisdiction if his contacts with the forum state were solely on behalf of his corporate employer. *Kinetic Instruments, Inc., 802 F. Supp. at 981.*

This court should conclude that plaintiff has satisfied this agency test. The first prong of the test is clearly met, as Forever 21 has engaged in purposeful activities in New York in connection with this action by operating a number of stores in the state, where plaintiff alleges a number of infringing designs were discovered. Plaintiff has also satisfied the "benefit" prong of the agency test by alleging that Forever 21 is primarily owned by DWC and JSC, and thus that they both derive financial benefit from

the sale of Forever 21 goods in New York, including [*8] the sale of infringing designs. Plaintiff also adequately alleges that the infringing conduct of Forever 21 was performed with the knowledge and consent of DWC and JSC. Among other things, plaintiff alleges that DWC and JSC have an ownership interest in One Clothing, the largest vendor to Forever 21 and a vendor identified as the source of infringing designs.

Finally, plaintiff has satisfied the "control" prong of the agency test. Under New York law, a "corporate president who has a financial interest in the company and the ability to supervise or control an infringing activity will be held personally liable." *Colour & Design v. U.S. Vinyl Mfg. Corp., No. 04 Civ. 8332, 2005 U.S. Dist. LEXIS 10964, 2005 WL 1337864, at *3 (S.D.N.Y. June 3, 2005).* Here, DWC and JSC are both high ranking officials and primary owners of Forever 21.

Plaintiff sufficiently alleges that both DWC and JSC have committed acts of infringement in New York State through their agents.

*Constitutional Minimum Contacts*

Before jurisdiction is proper, an additional inquiry must be made into whether the exercise of personal jurisdiction over DWC and JSC under New York law comports with federal due process requirements. Under the *Due Process Clause of the Fourteenth Amendment*, [*9] before an out-of-state defendant may be subject to personal jurisdiction in another state, the defendant must have "certain minimum contacts" with the forum state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945).* When such minimum contacts exist, the defendant should reasonably anticipate being brought into court in the forum state. *World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 287, 100 S. Ct. 559, 62 L. Ed. 2d 490 (1980).*

Here, even though DWC and JSC reside in California, their alleged roles in Forever 21's distribution and sale of infringing designs within New York is sufficient to satisfy due process requirements. It is well established that as long as "a party avails itself of the benefits of the forum, has sufficient minimum contacts with it, and should reasonably expect to defend its actions there, due process is not offended if that party is subjected to jurisdiction even if not 'present' in that

2008 U.S. Dist. LEXIS 73457, *9

State." *Kreutter v. McFadden Oil Corp., 71 N.Y.2d 460, 466, 522 N.E.2d 40, 527 N.Y.S.2d 195 (1988)*. These criteria are clearly satisfied as to DWC and JSC.

**Conclusion**

The motion to dismiss [*10] for lack of personal jurisdiction over defendants DWC and JSC is denied.

Dated: New York, New York

Sept. 24, 2008

SO ORDERED

/s/ Thomas P. Griesa

Thomas P. Griesa

U.S.D.J.

Exhibit 5, Page 19

Exhibit 6



Get our new FREE iPad app now

**FEATURES**  January 20, 2011, 5:00PM EST

# Forever 21's Fast (and Loose) Fashion Empire

The cheap-chic teen retailer is growing amid questions about just how original its clothes are

By Susan Berfield

The Takashimaya store on Manhattan's Fifth Avenue was spare, exquisite, and often too quiet for its own good. It closed in June. Five months later, only the Japanese department store's marble floors and high ceilings remain. The six-floor, 30,000-square-foot space has been transformed into a glittery, dizzying showplace for Forever 21, the cheap chic teen retailer with sprawling ambitions, not the least of which is wanting the grown-up world to take it seriously.

On a late November morning the day before the store is to open for the first time, Linda Chang takes a moment to contemplate her family's ambitions. "It's pretty historic that we're on Fifth Avenue," she says. "We've tried hard not to make it feel like fast fashion." Chang has recently become the slightly more public face of the very private family that owns Forever 21, and she's still feeling her way into the role. Chang is 29 with an undergraduate business degree from the University of Pennsylvania, and she's been leading the marketing department for the past two years. One day she'll likely run the nearly $3 billion, 477-store, 35,000-employee chain. For now, Do Won and Jin Sook, or Mr. and Mrs. Chang, as everyone at Forever 21 calls them, are still very much in charge. Mrs. takes care of the merchandise; Mr. takes care of everything else.

He is here today, a youthful-looking man in his 50s wearing a dark blazer, jeans, and a wool scarf. No one dares approach him uninvited. Linda is far more outgoing. "This is our rock-and-roll section: sequins, black lace, leopard, some leather, a mix of the wild things, our faux fur, crochet," she says, sweeping her arm across just some of what's on the first floor. She's dressed modestly in a Forever 21 black T-shirt and jeans with a boyfriend blazer. Her necklace, of interlocking Cs, is Chanel.

A 20-foot chandelier dangles from the mezzanine above, and flecks of gold paint shimmer on the walls. On other floors, Linda points out plaid shirts, Nordic ski sweaters, sweaters with elbow pads, military-style jackets, capes, draped work dresses. On and on it goes: Forever 21's buyers—and shoppers—expect the stores to offer every trend. "Mrs. Chang oversees all the merchandise," says Linda of her mother. "But she doesn't travel to store openings. She says: 'I'll get you the product. You sell it.' "

I notice a pair of faux-leather lace-up ankle boots that look a lot like the Jeffrey Campbell ones I'm wearing: The style is the same, so are the combination of hooks and holes for the laces and the distinctively shaped heel. Forever 21 sells the boots for $35.80, less than one-quarter the price I paid. I mention them, and Linda says brightly: "You should buy another pair here." Fashion watchers will find a lot more that looks familiar in Forever 21.

On the sixth floor, we stop in front of a revolving rack suspended from the ceiling. "That's one of my sister's favorite things," Linda says. "The clothes rotate around, and you can stop it when you want. It's from the movie *Clueless*. My sister wishes she could have one in her room." Linda's sister is Esther, who graduated from Cornell University with a degree in fashion and merchandising and at 24 is the head of the company's visual display team. She's been up all night putting the finishing touches on the store. "Esther had one week to set it up. We're fast. Everything we do is fast. We found out we had this space six weeks ago," says Linda.

The store is the third the company has opened in just two weeks and the hundredth in the past year. Forever 21 has been quick to take advantage of the misfortunes of other retailers, moving into buildings abandoned by Saks (SKS), Sears (SHLD), Mervyns, Dillard's (DDS), Circuit City, Virgin Megastore, and HMV. It's staked out some of the most prestigious real estate in the world—on this stretch of Fifth Avenue, on London's Oxford Street, in Tokyo's Shibuya district. Its new Times Square store is 96,000 square feet; its store on the Las Vegas Strip is 127,000. In seven years, Forever 21 has grown from 1 million square feet of space to 10 million, from one brand of its own to six, offering clothes for kids, men, and plus-size and pregnant women. This year it plans to open at least 75 more stores in five countries. Forever 21 had a profit of $135 million in 2008, the last time it made figures public. And it did all this without selling any item for more than $60.

 **SUBSCRIBE NOW AND SAVE 85%** 

Exhibit 7

5/21/09 at 2:30 PM

# Forever 21 Founder Doesn't Know Much About Her Company

By Amy Odell



The Forever 21 shirts are on the top row, Trovata's are on the bottom.

Forever 21 co-founder Jin Sook Chang testified in the trial brought against her company by Trovata, which alleges that the fast-fashion chain knocked off a few of its tops. Chang examined the striped Trovata cardigan and the alleged copy on the witness stand, and said she didn't see what the problem was. "Even at Gap, Old Navy and those stores, they sell this similar type of stripe. It is available at all places," she said, "Stripes, they are always similar." And that is why arguing this case could be tough for Trovata, no matter how blatant the knocking off may seem. Trovata is trying to argue that Forever 21's use of similar design details constitutes an infringement of the label's intellectual property.

Chang, speaking through a Korean translator, said she had never even heard of Trovata until they sued her. *Burn.* She didn't know much more about her own company. Other than her husband, she couldn't identify Forever 21's officers. She said she had never seen the company's financial statement:

> Asked by Colucci whether she would be "surprised" if Forever 21's sales exceeded $1.5 billion annually, Chang responded, "Yes, it's surprising. I didn't know."

So she doesn't know who runs her company or how much it makes. Amazing. As head buyer for the chain, Chang oversees a team of six or seven who select what

Photo: Courtesy Photo

Exhibit 7, Page 21

to purchase from vendors. She doesn't know how the garments are made — "we simply trust the vendors and they manufacture the garment for us." Selecting from the samples is easy. "We choose pretty ones," she explained. Sometimes she purchases things and then asks the vendors to alter them to make them pretty. She added that her team is aware of the copyright issue — for which Forever 21 has been sued more than 50 times over the last three and a half years — and tries to select garments that won't present legal complications. "[W]e thought this particular stripe would not cause any problems, so we didn't review this," Chang said.

Oh, man. This is not looking good for Trovata. It's like when women compete for male attention in bars. It's hard to beat the girl who's just as pretty as you but acts really, really dumb, even when she's not.

Forever 21 Co-founder Testifies in Trial [WWD]

**Fashion At Forever 21®**
Shop The Latest Styles For Less. Free Shipping On Orders Over $50.
www.Forever21.com

AdChoices ▷

**FROM OUR PARTNERS**

**Stylelist**

The Suntan Lotion And Alpine Snow Fragrance We Can't Get Enough Of

PHOTOS: Teri Hatcher's Best Red Carpet Looks

PHOTOS: Barneys Goes Gaga For The Holidays

Karl Lagerfeld: 'It's Much More Inspiring Not To Go Places"

PHOTOS: Marni's Latest Venture

 **Frisky**

Evening Quickies: Lindsay Lohan's Playboy Cover Leaked!

Ick: Bedbugs Are Inbreeding But Still Thriving

Today's Lady News: Why Is It Illegal To Give Yourself An Abortion?

Hot Links: Is Kim Kardashian Getting Back Together With Reggie Bush?

December 7: What Are We Wearing Today?

**bellasugar**

Amanda Seyfried Shares the Best Beauty Advice She's Received

Olivia Wilde Reveals Her Beauty Essentials

PopSugar's Best Holiday Gifts of 2011 - Join Our ⬥LIVE Video and Giveaway Show This Friday!

How to Make (and Give!) Scented Bath Salts

Color Yourself Happy: Pantone Is Coming Out With Makeup

**RACKED**

L'Occitane's Holiday Trees; Missoni For Target Back Online

The MirrorBook Air: Your Computer Meets Your Compact

VIDEO: 23 Seconds of Karl Lagerfeld's Upcoming Karl Line

The Pantone and Sephora Partnership Has Potential for Brilliance

The Cult of Brooklyn Shattered by One Day of Jury Duty

Copyright © 2010 2011, New York Media LLC. All Rights Reserved. Vulture® and Grub Street® are registered trademarks of New York Media LLC.

Exhibit 7, Page 22